728 A.2d 247

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. KENNETH KRUPINSKI, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 2, 1999—Decided April 23, 1999.

Before Judges PRESSLER, BROCHIN, and KLEINER.

*Asbell & Kushner,* attorneys for appellant (*Samuel Asbell,* on the brief).

*Lee A. Solomon,* Camden County Prosecutor, attorney for respondent (*Cheryl Hendler Cohen,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

On December 2, 1997, following a bench trial, defendant Kenneth Krupinski was convicted of contempt,. *N.J.S.A.* 2C:29–9(b), a disorderly person's offense.[1] Defendant was sentenced to a one-year probationary term and was fined $155. Additional statutory penalties were imposed. On that same date, defendant was acquitted of a separate complaint charging a violation of the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33 (the "Act"); specifically a violation of *N.J.S.A.* 2C:25–19a, characterizing the violation as harassment, *N.J.S.A.* 2C:33–4. Both complaints had been signed by defendant's wife, Lisa Kru-

---

[1] *N.J.S.A.* 2C:29-9 provides, in part:

    a. A person is guilty of a crime of the fourth degree if he purposefully or knowingly disobeys a judicial order or hinders, obstructs or impedes the effectuation of a judicial order or the exercise of jurisdiction over any person, thing or controversy by a court, administrative body or investigatory entity.

    b. Except as provided below, a person is guilty of a crime of the forth degree if that person purposely or knowingly violates any provision in an order entered under the provisions of the "Prevention of Domestic Violence Act of 1990," *P.L.* 1991, *c.* 261, when the conduct which constitutes the violation could also constitute a crime or a disorderly persons offense. In all other cases a person is guilty of a disorderly persons offense if that person knowingly violates an order entered under the provisions of this act.

pinski ("Lisa"). Both complaints were tried based upon the same evidence presented by a Camden County Assistant Prosecutor.

On appeal from the criminal conviction, defendant contends in part: (1) "the State failed to carry its burden of proof beyond a reasonable doubt;" and (2) "the violation, if any, ... was so *de minimis* in nature as not to rise to the level of a criminal violation." We reverse.[2] We are convinced that the evidence presented at defendant's trial was insufficient to warrant a conviction for contempt. Alternatively, even were we to conclude that defendant's conduct constituted a violation of a final restraining order previously issued pursuant to the Act, we would conclude that defendant's action was a "trivial, non-actionable event." *State v. Wilmouth,* 302 *N.J.Super.* 20, 23, 694 *A.*2d 584 (App.Div.1997). Our conclusion is buttressed by the procedural history preceding the trial.

I

From the rather sparse record on appeal, we glean that until November 29, 1996, defendant and Lisa resided together in Sicklerville with their two children Kyle, then age five and a half, and Heather, then age three. On that date, Lisa charged her husband

---

2 Defendant's contention that the violation was *de minimis* is an issue reserved for the assignment judge pursuant to *N.J.S.A.* 2C:2–11, which provides:

The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:

a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

c. Presents such extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.

with a violation of the Act. By the terms of a final restraining order dated December 5, 1996,[3] a Family Part judge ordered, among other things: (1) "Defendant is prohibited against future acts of domestic violence"; (2) "Defendant is barred from the following location": the former marital residence in Sicklerville; (3) "Defendant is prohibited from having any (oral, written, personal or other) form of contact or communication with [the] victim"; (4) "Plaintiff is granted exclusive possession of the Sicklerville residence and temporary child custody of Kyle and Heather"; (5) "Defendant must pay $2,300 a month—direct payment";[4] (6) "Law enforcement accompaniment of Plaintiff to scene or residence"; (7) "Defendant is prohibited from stalking, following, or threatening to harm, to stalk or to follow victim"; (8) "Defendant may visit Children under the following conditions: Mon— Wed & Thurs & weekends. Defendant may call Plaintiff to set up schedule. Pick up & drop off." The form of order contained the following pre-printed admonition:

A VIOLATION OF ANY OF THE PROVISIONS LISTED IN PART II OF THIS ORDER MAY CONSTITUTE EITHER CIVIL OR CRIMINAL CONTEMPT PURSUANT TO *N.J.S.A.* 2C:25–30 AND MAY RESULT IN DEFENDANT'S ARREST, PROSECUTION, AND POSSIBLE INCARCERATION, AS WELL AS THE IMPOSITION OF A FINE OR JAIL SENTENCE.

In a space designed for additional comments, the Family Part judge noted: "Defendant may telephone Plaintiff re picking up personal items from house."[5] Each provision of the restraining order was authorized pursuant to *N.J.S.A.* 2C:25–29(b).

---

[3] The final restraining order indicates Lisa's complaint was signed December 2, 1996, yet the record on appeal indicates that the initial complaint was signed November 29, 1996. The record is unclear as to the exact date that the couple separated. The separation occurred on either, November 29, 1996, December 2, 1996, or December 5, 1996.

[4] The order did not allocate this payment to plaintiff, the children, or both.

[5] The record in this appeal advises that defendant also appealed the Amended Order dated December 5, 1996, under Docket No. A–004517–96T3. The record does not include any other document relating to the complaint dated November 29, 1996.

On a date prior to April 21, 1997, defendant filed a complaint for divorce in Camden County. Lisa filed an answer and thereafter filed a motion to enforce litigant's rights. Defendant answered and filed a cross-motion seeking *pendente lite* relief.[6] On April 21, 1997, the parties, both represented by counsel, appeared in the Family Part. An extensive *pendente lite* order defining the rights and obligations of each party was memorialized in an order prepared by Lisa's counsel.[7] The order also consolidated the domestic violence action surrounding the December 5, 1996, final restraining order with the divorce dissolution proceeding. Several paragraphs of this order are pertinent to the present appeal:

3. *LAWNMOWER REPAIR:* The Plaintiff, Kenneth W. Krupinski, shall repair the lawnmower which will then allow the Defendant to cut the grass at the family residence.

. . .

12. *VISITATION:*

A. Plaintiff's mother shall be permitted, at Plaintiff's option, to pick up the two minor unemancipated children at curbside for purposes of Plaintiff's visitation.

B. The Plaintiff shall exercise visitation with the two minor unemancipated children of the parties every other weekend by his picking them up at [the former marital residence] on Friday evening at 6:00 p.m. and returning them on Sunday evening at 7:00 p.m.

C. The Plaintiff shall exercise weekday visitation between 4:30 p.m. and 7:30 p.m. on Tuesday and Thursday evenings.

On April 30, 1997, Lisa charged defendant with violating *N.J.S.A.* 2C:33–4a, alleging that defendant, on April 29, 1997, "with purpose to harass ... engage[d] in a course of alarming conduct or ... repeatedly committed acts with purpose to alarm or seriously annoy [her]." The summons was initially returnable in the Winslow Township Municipal Court on May 4, 1997. Due to scheduling conflicts, the hearing was postponed.

---

[6] The record on appeal did not provide this court with a copy of the divorce complaint or the answer, a copy of Lisa's motion, or defendant's cross-motion.

[7] The copy of the Family Part order provided as an exhibit in defendant's appendix does not contain the date of execution.

On October 24, 1997, while Lisa's April 30, 1997 complaint was still pending, she filed a separate complaint charging that on April 29, 1997, defendant "purposefully or knowingly did disobey a judicial order to wit: violate a final restraining order ... by harassing Lisa Krupinski by going to the house, in violation of *N.J.S.A.* 2C:29–9a." A warrant for defendant's arrest issued and bail was set at "$1,000 full cash" returnable before the Winslow Township Municipal Court on November 6, 1997, at which time the municipal court transferred Lisa's two complaints to the Family Part.

## II

At trial, Lisa described the event on April 29, 1997, which preceded the filing of her initial complaint alleging harassment as follows:

> [O]n April 29th he dropped the children off from visitation and when they came into the door and in the house and he proceeded up to the door and he said to me "I'm here to pick up the lawn mower" and I said, "the Judge ordered you to send somebody to pick the lawn mower up." And then [he] turned around and said "fine, have it your way, and you'll have to pay for that." I shut the door and I watched to see what was going to happen. He got in his truck and he drove about ten feet on the other side of my property line, then got out of his truck and stood on the sidewalk. And that's when I then called the police because I've been fearing for my safety in my own home and I was afraid what he was going to do next.
>
> The next thing that happened was the neighbor had come over and said that he was there to get the lawn mower. I then told the neighbor that I had called the police and I was going to let him handle [it] when he came to the house.

In further direct testimony, Lisa contended: (1) defendant had been ordered to repair the lawn mower, but had been orally instructed by the Family Court judge[8] to have another person

---

[8] The Family Court judge at defendant's trial was the same judge who presided at the *pendente lite* hearing on April 21, 1997. Although the *pendente lite* order was provided to the judge at defendant's trial, the judge indicated he had no personal recollection of the *pendente lite* proceedings and thus had no recollection if he had or had not orally instructed defendant to utilize another person to retrieve the lawn mower. The *pendente lite* order, prepared by Lisa's counsel, did not include any specific terminology dictating the manner by which defendant was to retrieve the lawn mower.

retrieve the lawn mower; and (2) that defendant had violated the prior visitation order when defendant failed to leave the children at curbside. On cross-examination, Lisa admitted that defendant remained at the curb when the neighbor came to the door of her residence and requested the lawn mower.

Before defendant testified, there was substantial colloquy between counsel and the judge as to the proper interpretation of the *pendente lite* order. It is apparent from the record that the judge was concerned with two issues: (1) whether the *pendente lite* order defined the manner by which defendant was to retrieve the lawn mower; and (2) whether the parenting time provisions of the *pendente lite* order restricted defendant to curbside while picking up and returning the children or whether defendant was so restricted by the final restraining order.[9]

Defendant testified as follows:

---

[9] Although defendant's counsel did not move to dismiss the contempt complaint at the close of the State's case, it is clear from the record that the judge considered the colloquy with counsel as constituting a motion to acquit. After reviewing the final restraining order and the *pendente lite* order, the judge stated:

I'm saying, I don't think it's vague at all. It says thou shalt not go to the house. The only exception is curb to curb pick up with respect to the children. And then this pick—and he has to repair the lawn mower. Well, if he's not permitted to go to the house he needs to find authority in anything here that permits him to pick up the lawn mower. There are two possibilities, one he picks it up or has someone else pick it up. The general reading of this, I see that he doesn't have the authority to go to the house unless he goes with the police or gets someone else to pick it up.

. . . .

I'm not going to hold him to the standard of an order that's not reduced to writing in a criminal matter. The only pending authority is *State v. Wilmouth*, 302 *N.J.Super.* 20, 694 *A.2d* 584, decided months ago, where the defendant is not permitted to have any contact with the victim, plaintiff, but he says I'm going to get to see the child tomorrow. And the Court, in that decision, held that there are many more important matters to address rather [sic] squandering judicial and prosecutor's resources on potential unmeritous [sic] litigations. So that the Appellate Division thought this was an insignificant violation because he made that one sentence comment.

Here we're doing more than just making a one sentence comment. He's gone to pick up the lawn mower. He's not permitted to be at the house,

> My mother had picked the children up at 4:30. She had forgotten to bring the car seat in the back of her car.... She had borrowed a car seat from Lisa that day. That car seat I had to return. It weighs too much for my three year old to carry, or at that time she was too small to carry the car seat. Rather than leaving it at curbside, I thought I would be courteous and I brought it up the steps, which I did, and then I left it on the step. I did not even go up on to the step.
>
> Lisa was standing there and asked the kids if everything was fine, they said "oh yeah" and they walked into the house. Lisa stood there and I said, "Lisa ... can I pick the lawn mower up today" ... I said, "if you could get it for me I'd be willing to bring it back by Thursday." She turned to me and she said, "you're stalking me." I immediately started to leave because I did not want to have any involvement with this.
>
> She then, as I'm walking down the steps—or down the sidewalk to the driveway, she says to me you have to get someone else to get it.

On cross-examination, defendant indicated that on one prior occasion, immediately after the final restraint was issued, a police officer had accompanied him to the marital home when he returned for his personal property. Defendant denied making the comment, "you'll have to pay for that," attributed to him by his wife.

On cross re-examination, the prosecutor elicited from defendant his version of the events which preceded the initial domestic violence complaint and the final restraining order on December 5, 1996. Thereafter, the prosecutor recalled Lisa as a witness to contradict defendant's version of those events in 1996. Lisa's response provided a detailed and graphic summary of marital abuse preceding the entry of the final restraint.

Following summations, the judge explained his decision as follows:

> The issue here is with respect to whether the defendant, in a pick up and drop off at curbside, went beyond his authority under the domestic violence restraining order issued 12/5/96. Of having, number one, contact with the victim, going to the home of the victim. There's no harassment here I can find, but the quest—clearly the defendant went one step beyond by going to the house and asking for the lawn mower.

---

> except to pick up the children. And the children pick up is curb to curb. I don't think the *Wilmouth* decision goes that far. And I think that the State has carried its *prima facie* case. So I'm going to deny the motion.

Now, the question is whether going to [the] house and asking for the lawn mower is *de minimis* in nature. The Court is well aware of the three judge panel in *Wilmouth,* establishing the *de minimis* rule. With respect to the type of conduct where a defendant simply made a reference, generally in front of the police, that I'm going to get to see the child another day or the following day. Here the defendant is going to [the] house and asking for the lawn mower, going to the door, which is some place he is not permitted to do. He is not permitted to go to that door. He's only permitted to go to the curb.

The Court, in consideration of what the Supreme Court talked about in *State v. Hoffman,* wanted to get some additional background. In general terms, in a subjective manner, there are allegations at least of some eleven years of abusive conduct. That, in this Court's mind, is an adequate basis for the victim to consider the defendant coming to the house and asking for the lawn mower to be a violation of the restraining order. So I'm going to enter a finding of guilty.

## III

We initially note defendant was found guilty of contempt, *N.J.S.A.* 2C:29–9, but as a disorderly person, and not of a fourth-degree crime.

To convict a defendant of the fourth-degree crime [rather than a disorderly persons offense] of contempt of a restraining order issued pursuant to the Prevention of Domestic Violence Act ("the Act"), the State must prove: (1) a restraining order was issued under the Act; (2) the defendant's violation of the order; (3) that defendant acted purposely or knowingly; and (4) the conduct that constituted the violation also constituted a crime or disorderly persons offense.

[*State v. Chenique–Puey,* 145 *N.J.* 334, 341–42, 678 *A.*2d 694 (1996) (citing *N.J.S.A.* 2C:29–9(b) and G. Miller, 33 *New Jersey Practice, Criminal Law,* § 264 (West Supp.1996)).]

Once the judge concluded that defendant was not guilty of harassment, *N.J.S.A.* 2C:33–4, defendant could have been convicted of contempt only if the judge concluded that he "knowingly violate[d] an order entered under the provisions of th[e] act." *N.J.S.A.* 2C:29–9(b). The judge properly focused upon defendant's conduct in simply going to Lisa's home on April 29, 1997, to determine if defendant's act constituted a violation of the December 5, 1996 final restraining order.

It is clear that, although the final restraint did bar defendant from going to Lisa's home, it specifically provided that defendant was permitted to visit the property at specified times to exercise parenting time: "Mon–Wed & Thurs & weekends. Defendant may call Plaintiff to set up schedule. Pick up and drop off." The restraining order did not limit defendant to the curbside.

The subsequent *pendente lite* order in the Family Part amended and amplified defendant's parenting time. That order, in paragraph twelve, *supra*, restricted defendant's mother to curbside, but did not similarly limit defendant. We think it noteworthy that Lisa initially charged defendant with harassment attributable to comments allegedly uttered by defendant on April 29, 1997, but did not charge defendant with contempt by his mere presence at the property beyond curbside.

We also note that the trial judge in denying defendant's motion to acquit at the close of the State's case (a motion which was not in fact presented) stated, in part, "I'm not going to hold him to the standard of an order that's not reduced to writing in a criminal matter," *see supra* note 8; yet, at the close of the entire case, declared defendant guilty of contempt based upon an interpretation of the prior orders entered in previous proceedings.

Under the factual circumstances presented, we cannot conclude that it is unreasonable for a parent to return two children, ages three and five and a half, to the front door of their custodial parent's residence rather than at curbside after 7:00 p.m. unless specifically so ordered. Defendant's explanation that he was carrying his tired daughter and a car seat to the front door was entirely reasonable. Moreover, the *pendente lite* order which required defendant to "repair the lawn mower" did not specifically prohibit defendant's entry upon the property occupied by his wife. Although Lisa testified that the same judge had, at the *pendente lite* proceeding, orally ordered defendant to seek the assistance of another person when he retrieved the lawn mower, the State did not present a transcript of the *pendente lite* proceeding and the judge admitted that he had no personal recollection of the specifics pertinent to the *pendente lite* proceeding.[10]

In *State v. Hoffman*, 149 *N.J.* 564, 695 *A.*2d 236 (1997), the Court noted that the purpose of the Act is to "assure the

---

[10] In the absence of a written transcript, undoubtedly a tape of the *pendente lite* proceeding would have been readily available. The State did not request

victims of domestic violence 'the maximum protection from abuse the law can provide.'" *Id.* at 584, 695 *A.*2d 236 (quoting *N.J.S.A.* 2C:25–18). Additionally in *Wilmouth, supra,* we noted, "The Domestic Violence Act affords critically needed protections in appropriate situations." 302 *N.J.Super.* at 23, 694 *A.*2d 584. However, the Act may not be construed in a manner that precludes otherwise reasonable conduct unless the orders issued pursuant to the Act specifically proscribe particular conduct by a restrained spouse. Declaring defendant in criminal contempt, albeit as a disorderly person, and sentencing him to a term of probation and a monetary fine for non-proscribed conduct was improper. Although Family Part judges who hear domestic violence cases develop experience and expertise in that area of the law, *Cesare v. Cesare,* 154 *N.J.* 394, 413, 713 *A.*2d 390 (1998), and we defer to the trial judge's findings particularly with respect to the testimony of the parties, *id.* at 413–14, 713 *A.*2d 390, we must determine if, in a criminal or quasi-criminal proceeding, defendant's conduct violated beyond a reasonable doubt the specific terms of a prior judicial order entered under the provisions of the Act. *N.J.S.A.* 2C:29–9. Defendant's conduct in returning the children to the front door, in returning a car seat to his wife, and in requesting the lawn mower in an effort to comply with the *pendente lite* order, if a violation at all, cumulatively was nevertheless a "trivial, non-actionable event," *Wilmouth, supra,* 302 *N.J.Super.* at 23, 694 *A.*2d 584, unless specifically proscribed by a prior court order. Although the trial judge might have utilized the occasion of defendant's appearance in court to amend or clarify the terms of each prior court order to proscribe defendant's future conduct or to orally admonish defendant as a mechanism to prevent future prohibited action, a contempt conviction was unwarranted.

Reversed.

---

that the judge listen to the taped proceeding, nor did the judge *sua sponte* avail himself of that record.