# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4996-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.M.H.,

     Defendant-Appellant.

_____

     Submitted October 29, 2019 – Decided November 26, 2019

     Before Judges Messano and Susswein.

     On appeal from the Superior Court of New Jersey, Law Division, Family Part, Morris County, Docket No. FO-14-0035-18.

     Fisher & Phillips, LLP, attorneys for appellant (Eric Tadeusz Baginski, on the briefs).

     Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Kimberly Lauren Tolentino, Assistant Prosecutor, on the brief).

PER CURIAM

Following a bench trial, Judge Ralph E. Amirata found defendant J.M.H. guilty of the disorderly persons offense of contempt of a domestic violence restraining order, N.J.S.A. 2C:29-9(b)(2), and the petty disorderly persons offense of harassment, N.J.S.A. 2C:33-4(a).[1] The judge sentenced defendant to 180 days in the county jail and imposed appropriate financial penalties; since defendant had already served more than 200 days in the facility, the actual sentence was "time served." The judge did not impose any term of probation.

The trial evidence revealed that defendant and his ex-wife, B.H. (Brenda), are the parents of J.H. (James), born in 2004. A final restraining order (FRO) issued pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 through -35 (PDVA), first in 2007, and amended in 2016, prohibited defendant from having contact with Brenda and certain members of her family. The FRO permitted defendant to make one phone call per day between 7:30 p.m. and 8 p.m. to Brenda's cellphone to speak with James, and Brenda was to "make all reasonable efforts to have [James] speak to defendant." Additionally, the FRO permitted Brenda to screen all "cards and letters" from defendant to James, and further stated:

---

[1] We use initials and pseudonyms to maintain the confidentiality of those involved. R. 1:38-3.

A-4996-17T3

> The court is particularly concerned with def[endant] using his right to communicate with the child as a vehicle to communicate with . . . or disparage [Brenda] with the knowledge [Brenda] will be screening the letters/cards. In such cases, [Brenda] may use her discretion in deciding what communications are appropriate for [James]. Any communication to or about [Brenda] may be deemed a violation of this order and subject def[endant] to criminal contempt and/or prohibition of any communication with [James], upon appropriate application.

Brenda testified that she obtained the initial FRO after the divorce, and that defendant had violated its terms repeatedly, leading to its modification. James was now involved in numerous sports, requiring him to attend practices during the same hours defendant was permitted to call his son. Brenda said that defendant sometimes did not call at all for days and then would call several days in a row to speak with James.

In May 2017, defendant called the municipal police department, expressing concern for his son's well-being. Over the next several months, police frequently responded to Brenda's home to conduct a "welfare check" of James. Brenda said this happened six times in one month and was quite "unsettling," since her son was fine and in good health. She described one occasion where she returned home, only to find the police waiting for her. She

3

denied ever turning her cell phone off, as defendant apparently claimed when he called police.

The State called several police officers who all testified about the numerous welfare checks they conducted in response to defendant's 9-1-1 calls between May and August 2017. In each instance, defendant contacted the local police department, claimed he could not reach James by phone, and requested police conduct a check on the child's welfare. On each occasion, police were able to reach Brenda, who confirmed that James was fine and either at practice or out with her. The judge heard recordings of two of defendant's phone calls to police.

In his testimony, defendant claimed that the domestic violence proceedings ruined the "amazing" relationship he previously had with James, and he insisted Brenda refused to answer his calls, allowing them instead to go to voicemail. James would not return his calls, so defendant requested that police make sure his son was all right.

The judge found Brenda and the police officers were credible witnesses, but defendant was not. Judge Amirata took note of the officers' familiarity with the family due to the frequency of defendant's calls. Citing defendant's demeanor on the phone, the judge rejected defendant's claim that he requested

A-4996-17T3

police assistance because he believed James was "injured or abused." Rather, Judge Amirata found defendant was "trying to exercise his parenting time," and being "unable to do so as prescribed by the [FRO] . . . utilize[d] 9-1-1."

The judge found defendant guilty of harassment, specifically concluding defendant knew police were obligated to respond to his 9-1-1 calls, and that defendant made the calls with the purpose to harass Brenda in retaliation for not being able to speak with James. "Applying the[] same factual findings[,]" the judge found defendant guilty of contempt. He concluded defendant purposely and knowingly violated the FRO, by "utilizing self[-]help to have contact" with Brenda, through a third-party, "specifically law enforcement[.]"

Before us, defendant argues:

> I. THE TRIAL COURT ERRED IN CONVICTING [DEFENDANT] FOR HARASSMENT UNDER N.J.S.A 2C:33-4(a).[2]
>
> II. THE TRIAL COURT ERRED IN CONVICTING [DEFENDANT] FOR CONTEMPT UNDER N.J.S.A 2C:29-9(b).
>
> III. THE LAW MUST NOT JEOPORADIZE [sic] CHILD SAFETY. (Not raised below).

---

[2] We have not listed the sub-points and sub-sub-points contained in defendant's brief.

A-4996-17T3

Having considered these arguments in light of the record and applicable legal principles, we affirm.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411–12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. However, we do not defer to the judge's legal conclusions if "based upon a misunderstanding of . . . applicable legal principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

N.J.S.A. 2C:33-4(a) provides, "a person commits a petty disorderly persons offense if, with purpose to harass another, he . . . [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner

likely to cause annoyance or alarm[.]" (Emphasis added). In <u>State v. Hoffman</u>, the Court said a violation of N.J.S.A. 2C:33-4(a) requires proof that:

> (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners . . . likely to cause annoyance or alarm to its intended recipient.
>
> [149 N.J. 564, 576 (1997).]

To sustain a conviction under N.J.S.A. 2C:33-4(a), "there need only be proof of a single . . . communication, as long as defendant's purpose in making it, <u>or causing it to be made by another</u>, was to harass and as long as it was made in a manner likely to cause annoyance or alarm to the intended recipient." <u>J.D. v. M.D.F.</u>, 207 N.J. 458, 477 (2011) (emphasis added).

In his first point, defendant argues the evidence failed to prove that he acted with a purpose to harass Brenda when he requested police perform welfare checks, neither the 9-1-1 calls nor police visits were done in a manner likely to cause Brenda annoyance or alarm, and Judge Amirata failed to consider the "past conduct" of the parties. We disagree.

"Integral to a finding of harassment . . . is the establishment of the purpose to harass . . . ." <u>Corrente v. Corrente</u>, 281 N.J. Super. 243, 249 (App. Div. 1995) (citing <u>D.C. v. T.H.</u>, 269 N.J. Super. 458, 461 (App. Div. 1994)). "A person acts

purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." Hoffman, 149 N.J. at 577 (quoting N.J.S.A. 2C:2-2(b)(1)). Thus, to find harassment, there must be proof that a defendant's conscious object was to "harass[,]" that is, "'annoy'; 'torment'; 'wear out'; and 'exhaust.'" State v. Castagna, 387 N.J. Super. 598, 607 (App. Div. 2006) (quoting Webster's II New College Dictionary 504 (1995)). "[A] purpose to harass may be inferred from the evidence presented[,]" and "[c]ommon sense and experience may inform that determination." Hoffman, 149 N.J. at 577 (citations omitted).

In this case, there was ample evidence supporting the judge's finding that defendant's repeated calls to local police were not motivated by genuine concern for James's safety, but rather by defendant's attempts at "self-help" regarding parenting time and his desire to retaliate against Brenda for allegedly thwarting defendant's ability to speak with James. The judge credited Brenda's testimony that these police visits caused her and her family annoyance and alarm.

We also reject defendant's claim that the communications were not made in a manner required by the statute. The "catchall provision of subsection (a)[,]" id. at 582, that the communication be made in "any other manner likely to cause annoyance or alarm[,]" N.J.S.A. 2C:33-4(a), "encompass[es] only those types of

communications that also are invasive of the recipient's privacy." Hoffman, 149 N.J. at 583. The judge found that defendant knew police were duty-bound to react to his 9-1-1 calls and contact Brenda. It is beyond peradventure that visits from police officers to one's home, and voicemails left by police on one's cellphone, are invasive of one's privacy. Moreover, as the Court said in Hoffman, "although conduct or speech that may not sufficiently constitute an invasion of privacy to the non-victim, may in fact constitute harassment to the victim of past domestic abuse." Id. at 585.

Defendant contends that because the FRO did not "expressly prohibit[]" telephone calls, and because his calls to police lacked any intent to harass Brenda, we must reverse his contempt conviction. We disagree.

A person is guilty of contempt "if that person purposely or knowingly violates any provision in an order entered under the provisions of the [PDVA.]" N.J.S.A. 2C:29-9(b)(1). If the violation is not itself a crime or disorderly persons offense — harassment is not — then contempt is a disorderly persons offense. N.J.S.A. 2C:29-9(b)(2). "[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a restraining order knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). The statute "may not be construed in a

manner that precludes otherwise reasonable conduct unless the orders issued pursuant to the Act specifically proscribe particular conduct by a restrained spouse." State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999).

While the FRO did not prohibit defendant from calling Brenda once per day to speak with James, it did prohibit all other contact. When a defendant does not communicate directly with the target of his harassing conduct, the State must prove the defendant spoke to the intermediary with the purpose to harass another by causing the intermediary "to make a communication in a [']manner likely to cause annoyance or alarm[']" to the other. State v. Castagna, 387 N.J. Super. 598, 605 (App. Div. 2006) (quoting N.J.S.A. 2C:33-4(a)). The judge found that defendant's true purpose in calling police was not to check on the welfare of his son, but rather to retaliate against Brenda. As such, defendant's 9-1-1 calls were not "otherwise reasonable conduct" that the FRO failed to "specifically proscribe." Krupinski, 321 N.J. Super. at 45.

To the extent we have not specifically addressed defendant's other arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4996-17T3