# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1881-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.O.P.,

     Defendant-Appellant.

_____

        Submitted March 23, 2021 – Decided April 28, 2021

        Before Judges Mawla and Natali.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Docket No. FO-04-0223-19.

        Conrad O'Brien, PC, attorneys for appellant (Christopher A. Barrett, on the briefs).

        Jill S. Mayer, Acting Camden County Prosecutor (Linda A. Shashoua, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a bench trial in the Family Part, defendant D.O.P.[1] was convicted of contempt, N.J.S.A. 2C:29-9(b)(2), a disorderly persons offense, for violating a final restraining order (FRO) issued under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. On appeal, defendant challenges his conviction. We affirm.

The trial evidence revealed defendant had an "on and off" relationship with I.G. from 2012 to 2013 while they were in high school. I.G. obtained a FRO against defendant which barred him from her Cherry Hill residence and place of employment. In addition, the FRO prohibited defendant from I.G.'s father's residence in Camden.

At the time of trial, I.G.'s home was located on a cul-de-sac. On August 29, 2018, as she was returning home from work with her husband, I.G. saw defendant standing across the street, pointing at her house. Defendant fled when he saw I.G., who then called the police. A criminal-summons was subsequently filed against defendant charging him with contempt.

---

[1] We use initials to refer to defendant and the victim to shield the victim's identity. R. 1:38-3(c)(12).

At trial, I.G. testified that defendant was approximately ten feet away from her and "as soon as [defendant] saw [her] vehicle, he took off running." She also stated that defendant had previously visited her at the Cherry Hill address when they were dating. I.G.'s husband also testified and corroborated her version of the August 2018 incident.

Defendant acknowledged that I.G. had a FRO against him and admitted that he was on I.G.'s street on August 29, 2018, approximately nine days after he was released from prison. He explained, however, that his appearance in front of I.G.'s house was inadvertent. He testified that he was going to see his aunt at a local hospital but missed the correct bus stop. Defendant stated that when he got off the bus, he obtained directions for the hospital from his cellphone, which directed him to the street where I.G. lived.

Defendant denied knowing that I.G. lived on the street and stated he did not see her or her husband that day. He explained that during their relationship, I.G. did not live at that location and he believed it was her grandmother's house. He testified that when they were dating, I.G. lived with her father in Camden. Defendant acknowledged, however, that he had previously been at I.G.'s current residence when he picked her up for the high school prom.

3

On December 11, 2018, the trial court issued an order finding defendant guilty of contempt under N.J.S.A. 2C:29-9(b)(2). In its accompanying oral decision, the court found both I.G. and her husband to be credible witnesses. With respect to I.G., the court stated that she "was very knowledgeable and appeared to know what [she was] testifying to" and that she "never contradicted herself." The court noted that I.G.'s husband's testimony was "believable because it [was] consistent with [I.G.'s] testimony."

In contrast, the court characterized defendant's testimony as incredible, "inconsistent[,] and inherently unbelievable." The court noted that defendant "testified that he didn't know [I.G.] lived [on the cul-de-sac] despite having been to that address on numerous occasions" and "[w]hile [defendant] claimed [he thought I.G.] lived at [an] address in Camden, he referred to that address as her dad's house and then quickly corrected himself and said her home." The court found that these "inconsistencies and slip[-]ups erode[d] any credibility established by his calm demeanor."

The court concluded that the State proved all elements of N.J.S.A. 2C:29-9(b)(2) beyond a reasonable doubt. The court found that I.G. lived at her current residence for over twenty years and that it was an address defendant was prohibited from visiting under the FRO. The court also rejected defendant's

4

argument that I.G.'s residence was not "a place of prohibited contact because the address [was] not specifically contained in the [FRO]." The court noted that "the residence of a plaintiff is not listed on a [FRO] in order to provide further protection to a victim of domestic violence." The court also determined that defendant knew that the FRO was in effect.

As to whether defendant purposely violated the FRO, the court found that it was uncontested that he was "present on [the street] directly across from [I.G.'s] home" and characterized defendant's explanation for his presence on the cul-de-sac as "unbelievable." The court further concluded defendant's conduct, specifically that he ran away after I.G. saw him, was indicative of his purpose and intent to violate the FRO. The court sentenced defendant to a thirty-day period of incarceration concurrent to a separate sentence he was serving for a parole violation.

Before us, defendant argues that the trial court erred because it failed to specifically find that he knowingly and purposefully violated the FRO. Defendant further maintains, for the first time on appeal, that any violation of the FRO was de minimis. We disagree with both arguments.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal

when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invrs. Ins., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. However, we do not defer to the judge's legal conclusions if "based upon a misunderstanding of . . . applicable legal principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

In contempt proceedings, "the primary consideration is vindication of the authority of the court . . . [as] court orders must be obeyed." In re Adler, 153 N.J. Super. 496, 501 (App. Div. 1977) (internal quotation marks omitted); see also State v. Gandhi, 201 N.J. 161, 189 (2010) ("Restraining orders are entered for purposes of shielding a victim who needs protection and who is compelled to seek judicial assistance to obtain that security; thus, we have insisted on full compliance with restraining orders no matter the flaws a defendant may discern in their form or entry.").

A-1881-18

"A person is guilty of a disorderly persons offense if that person purposely or knowingly violates an order entered under the provisions of the [PDVA] . . . ." N.J.S.A. 2C:29-9(b)(2); see State v. Finamore, 338 N.J. Super. 130, 132 (2001) (stating the State satisfies its burden by proving a "knowing violation of an existing domestic violence restraining order"). Under the Code, "[a] person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence." N.J.S.A. 2C:2-2(b)(2).

"[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a restraining order knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). The statute "may not be construed in a manner that precludes otherwise reasonable conduct unless the orders issued pursuant to the PDVA specifically proscribe particular conduct by a restrained [party]." State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999).

As noted, in defendant's first point, he maintains that the court's factual findings were deficient because the court failed to find that he intended to violate the FRO. He also contends that he did not knowingly violate the FRO as it did

not expressly identify I.G.'s address or preclude him from being on a public street. We are not persuaded by either of these arguments.

The court clearly concluded that defendant intentionally violated the FRO. First, the court rejected defendant's testimony that he inadvertently appeared at I.G.'s residence. In this regard, the court expressly found that defendant's testimony was "inherently incredible." Second, the court found that defendant "turned and ran the other way after [I.G. and her husband] observed him across the street" and concluded that "[t]his conduct [was] indicative of purpose and intent." Third, the court rejected defendant's argument that he was unaware that I.G. lived at the Cherry Hill residence.

Conversely, the court found I.G.'s and her husband's testimony believable and accepted their version of the August 29, 2018 incident. These findings support a reasonable inference that defendant knew his conduct would "bring about a prohibited result." S.K., 423 N.J. Super. at 547.

We also reject defendant's contention that because I.G.'s residence was not specifically listed on the FRO, and he was on a public street, it was improper for the court to conclude he violated the FRO. While we acknowledge, as did the trial court, that the FRO did not specifically list I.G.'s Cherry Hill residence, the FRO explicitly prohibited defendant from appearing at her home. Here,

based on the evidence at trial, the court concluded that defendant was aware that I.G. lived at the address in Cherry Hill and that defendant had no legitimate purpose for being on the street. The record supports the court's finding.

Finally, we reject defendant's claim that his appearance on a public street, lack of direct communication with I.G., and his peaceful retreat constituted a de minimis violation of the FRO because no harm was caused under N.J.S.A. 2C:2-11.[2] Defendant's argument is procedurally defective and substantively without merit.

Procedurally, we note that defendant did not raise this argument in the trial court. Generally, an appellate tribunal need not consider questions not properly presented to a trial court, unless the issue raised relates to the jurisdiction of the trial court or concerns a matter of great public interest. Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973). Neither exception applies here.

In any event, we are satisfied that defendant's conduct was not de minimis. Defendant was in front of I.G.'s home on a secluded dead-end cul-de-sac pointing at I.G.'s house approximately nine days after he was released from

---

[2] N.J.S.A. 2C:2-11(b) provides that the assignment judge may dismiss a prosecution if a defendant's conduct "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction."

prison. Moreover, defendant was ten feet away from I.G. when he made eye contact with her. Defendant's conduct communicated to I.G. that he continues to know where she lives. State v. Hoffman, 149 N.J. 564, 586 (1997) ("An abuser who spontaneously appears or makes surprising communications without any legitimate purpose enhances the victim's apprehension. The fears of a domestic violence victim and the turmoil she or he has experienced should not be trivialized.").

In addition, contrary to his claim, defendant did not "peacefully retreat[]." Rather, he fled to avoid apprehension. Defendant's actions directly violated the FRO's purpose barring him from I.G.'s residence and cannot be construed to be de minimis infractions.

The court applied the correct law and found defendant guilty beyond a reasonable doubt. We conclude there exists sufficient credible evidence in the record to support the court's findings, which we will not disturb. To the extent we have not addressed any of defendant's remaining arguments it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

A-1881-18

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

11