**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2566-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

F.B.I.,

     Defendant-Appellant.

_____

Submitted March 11, 2024 – Decided July 26, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket Nos. FO-04-0327-23 and FO-04-0170-23.

Kenneth R. Manyin, attorney for appellant.

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from two convictions of disorderly contempt of a domestic violence final restraining order (FRO) in violation of N.J.S.A. 29-9(b)(2). Having reviewed the record and the governing law, we affirm.

On September 6, 2016, a Family Part judge issued an FRO (the September 2016 FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, against defendant F.B.I.,[1] the husband of L.I. The FRO barred defendant from L.I.'s residence and place of employment. The FRO also prohibited "any oral, written, personal, electronic, or other form of contact or communication with [L.I.]," from "making or causing anyone else to make any harassing communications to [L.I.]," or from "stalking, following, or threatening to harm, to stalk or follow [L.I.]." The FRO also granted L.I. temporary custody of their son and denied defendant visitation. Three days later, defendant was personally served with the FRO.

Nearly three years later, on April 1, 2019, an amended FRO (the April 2019 FRO) was entered granting sole custody of the son to L.I. On that date, defendant was incarcerated and the FRO was issued by default. The amended FRO was admitted at the hearing without objection.

---

[1] We identify the parties by initials to protect the identity of the victim of domestic violence. R. 1:38-3(d)(9), (10), and (13).

On April 25, 2023, a bench trial was held concerning defendant's violation of the 2016 FRO on two separate dates:  August 9, 2022 (the August violation) and October 3, 2022 (the October violation).  The State's case consisted of the testimony of L.I., Gloucester Police Department Officer Simms, and Camden County Sheriff's Officer Andrew Johnson.  Defendant did not testify or call any witnesses.

L.I. was the State's first witness.  According to L.I., on August 9, 2022, defendant used his sister to see his son at L.I.'s home.  Defendant's sister asked to see her nephew.  L.I. went upstairs to get him and when they returned, defendant was sitting on her couch.  Defendant and their son went outside to play.  After an hour, the son came inside and told his mother that defendant had called for an ambulance, concerned that he was going to pass out from the heat.  L.I. went outside to check on defendant.  After the ambulance arrived, defendant declined to be transported by ambulance to the hospital.  Instead, he asked L.I. to drive him and L.I. agreed to do so.

While in route to the hospital, defendant asked L.I. to take him to his sister's home.  Defendant called his sister and said:  "[G]et my trial clothes ready."  Fearing for her safety, L.I. told defendant she needed to give her housekeys to her stepbrother.  When L.I. arrived at her stepbrother's workplace, she realized he was not working that day.  L.I. called him and was told that he

3

was at their parent's home. L.I. drove to her parents' home and relayed what had happened to her mother, who called the police. Defendant left before the police arrived.

L.I. recounted the October incident at her home. In response to a "faint" knock on her front door, L.I. asked who was there. When there was no response, she looked out of her window and asked again. Defendant responded, saying he was hungry, thirsty, and cold and asking if he could have something to eat. L.I. told defendant that he was not supposed to be at her home and that they had a court appearance the next day. Nonetheless, she told defendant she would get him some food, but he would have to leave.

As L.I. was preparing the food for defendant, she heard the alarm signal the front door was opened. She rushed to the door and discovered their son had opened it. According to L.I., they spoke for approximately fifteen minutes at the front door. Defendant restated that he was hungry, cold, thirsty, needed help, and wanted to sit with their son for a few minutes. As defendant sat with their son, L.I. sent a text to her friend, informing her of defendant's presence and asking her to contact L.I.'s mother. Shortly thereafter, the police arrived.

Officer Simms testified that he responded to an incident at L.I.'s residence with a restraining order in place. Simms saw defendant in L.I.'s residence and arrested him.

Officer Johnson testified that he served defendant with the initial FRO on September 9, 2016. Johnson, however, did not recall how he served defendant.

On this evidence, the trial court found defendant guilty of disorderly persons contempt. In an oral opinion, the court first articulated the relevant standard of proof the State is obligated to meet and reviewed in detail the testimonial and documentary evidence. Following this analysis, the court focused on the application of the amended April 2019 FRO to the statute. The court reasoned the FRO was amended for "the sole purpose of dealing with custody of the minor child." The court concluded: "The restraining order in no way was modified as to the person who was protected. It was in no way modified as to the type of contact that was prohibited." The court determined defendant was "clearly" aware of the 2016 FRO.

The trial court also credited the testimony of the State's witnesses. The court found L.I. credible because she was "calm," "very pleasant," "thoughtful[]," and "provide[d] very specific details" regarding the events. L.I. also maintained eye contact, and her demeanor remained unchanged when questioned by the State and defense counsel. The court found Simms "calm," "professional," and "unaffected by questions." Johnson was likewise "calm," "agreeable," with a "pleasant demeanor and tone," and testified "uniformly on direct and cross-examination."

5

After providing defendant with the opportunity to address the court and considering the arguments of counsel, defendant was sentenced to thirty days in prison for the August violation and sixty days in prison for the October violation, to run concurrently. Defendant was given jail credit of 119 days for time served while awaiting trial.

Defendant now appeals contending the trial judge committed a series of errors by finding the amended April 2019 FRO was "in effect," rejecting defendant's arguments regarding the admission of hearsay evidence and the State's failure to produce the 9-1-1 dispatch call, misapplying the elements of N.J.S.A. 2C:29-9(b)(2), and abusing its discretion in making credibility determinations. After considering the record developed at the bench trial and mindful of our standard of review, we affirm.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412); see also Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016)

A-2566-22

(recognizing that "our review of the Family Part's determinations regarding child support is limited").

We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

Our review of a finding of guilt in a contempt proceeding is generally limited to determining "whether the record contains sufficient evidence to support the judge's conclusion." State v. J.T., 294 N.J. Super. 540, 544 (App. Div. 1996) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). Because a violation of a restraining order is punishable as a criminal act, a defendant is entitled to the rights of all criminal defendants. We must, therefore, ensure the State has carried its burden of proving the defendant's guilt beyond a reasonable doubt. See N.J.S.A. 2C:1-13(a); State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999).

To be guilty of the disorderly persons offense of contempt of an FRO under N.J.S.A. 2C:29-9(b)(2), the State must prove beyond a reasonable doubt that defendant was served with the FRO and knowingly committed behavior that

violated the order.  State v. L.C., 283 N.J. Super. 441, 447-48 (App. Div. 1995).

A person acts "knowingly" with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. N.J.S.A. 2C:2-2(b)(2).

Based on those governing principles, the trial court's oral opinion was sound.  We agree with the trial court's legal conclusion that the amended April 2019 FRO did not supersede the protections afforded to L.I under the September 2016 FRO.  Defendant was aware of the 2016 FRO, and even if he was not served with the amended 2019 FRO, he knew that he could not have any communication with L.I. or be in her residence.

We have carefully considered the record and defendant's arguments that the State's failure to produce the transcript of the 9-1-1 dispatch call to Officer Simms constituted a Brady[2] violation and that Simms's testimony concerning the call was inadmissible hearsay, and find they are without merit sufficient to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2]  Brady v. Maryland, 373 U.S. 83 (1963).