# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1572-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

U.Y.A.,[1]

     Defendant-Appellant.

_____

Submitted November 13, 2024 – Decided February 27, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FO-06-0065-24.

Linwood A. Jones, attorney for appellant.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings in accordance with Rule 1:38-3(d)(10).

PER CURIAM

Defendant, U.Y.A., appeals from the December 15, 2023, Family Part order finding her guilty of the disorderly persons offense of criminal contempt for violating a temporary restraining order (TRO) issued pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. Following a bench trial, the judge found beyond a reasonable doubt that defendant sent text messages to her ex-boyfriend, J.C., violating the TRO prohibiting any contact with him. The judge imposed financial penalties totaling $225. Because there was sufficient credible evidence supporting the adjudication, we affirm.

We glean these facts from the record. Defendant and J.C. had a short-lived relationship. After the relationship ended, J.C. asked defendant to return his personal items, and she refused, apparently viewing the items as gifts. Shortly thereafter, each party obtained a TRO against the other, barring any "oral, written, personal, electronic, or other form of contact or communication" with the other. Subsequently, through the police, J.C. again asked defendant to return the items. Defendant told the officers she had none of J.C.'s personal belongings. About two hours later, J.C. received a series of threatening, insulting text messages from an unknown number stating he was not getting the

A-1572-23

gifts back. Believing defendant sent the messages, J.C. reported the communication to the police, and defendant was charged with criminal contempt, in violation of N.J.S.A. 2C:29-9(b)(2).

At a December 15, 2023, bench trial, the parties stipulated to the validity of J.C.'s TRO, defendant's knowledge of its terms, and proper service of defendant. The judge admitted the text messages into evidence, which read in pertinent part:[2]

> First of all, your jewelry, your T.V., and your pots are mine now. So, stop it. I truly do forgive you even without an apology. Everything is a learning experience. Like, I really have to get you smoked. Like, you should really kill yourself. I got what I wanted from you. You're ugly . . . .
>
> You can call [the police] all you want. They're f[***]ing stupid. . . .
>
> I already called you're [sic] job, and sent them that pic of your d[***] so it doesn't matter anyway.
>
> . . . .
>
> Drop your [TRO], and I'll drop mine obviously. You can have all your stuff back and I'll let you in[.]
>
> . . . .

---

[2] We have redacted the messages to maximize privacy, minimize obscenity, and improve readability. Otherwise, we have reproduced them exactly as written.

I'm trying to call you, but it's not going through. You really blocked my number in front of [the police station]? Listen, I'll call you from this number. If anything happens to me . . . , I'll really do anything and everything to really jam you the f*** up. Whatever it takes.

J.C. testified he believed defendant sent the text messages based on their timing and content. However, he acknowledged that only he or defendant could have sent them. Defendant denied sending the text messages and claimed J.C. sent them to himself using an anonymous texting application. According to defendant, it did not make sense for her to have sent the messages, and she believed J.C. was retaliating against her for ending the relationship.

In an oral decision placed on the record the same day, the judge credited J.C.'s testimony and concluded beyond a reasonable doubt that defendant sent the messages in violation of the restraining order. Given the parties' stipulations, the judge explained the State only had to prove defendant sent the text messages and agreed only defendant or J.C. could have done so. After conducting a line-by-line analysis of the text messages, while considering the messages' "timing and . . . substance," the judge was convinced that defendant was the culprit.

In assessing credibility, the judge relied upon his observations of the parties while testifying. Although the judge found J.C. "a little confrontational" during cross-examination, he saw nothing that "rose to the level of [a] . . .

4

devious, pre-planned nature" to support defendant's contention that J.C. sent the texts. After making credibility assessments and "carefully" parsing through each statement in the text messages, the majority of which the judge found made no sense coming from J.C. but "[made] sense coming from . . . defendant," the judge found defendant guilty of contempt, and this appeal followed.

On appeal, defendant raises the following single point for our consideration:

> THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF CONTEMPT BECAUSE THE STATE FAILED TO PROVE DEFENDANT GUILTY OF CONTEMPT BEYOND A REASONABLE DOUBT[.]

Our review of a finding of guilt in a contempt proceeding is generally limited to determining "whether the record contains sufficient evidence to support the judge's conclusion." State v. J.T., 294 N.J. Super. 540, 544 (App. Div. 1996) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). In that regard, "we defer to the trial judge's findings particularly with respect to the testimony of the parties," State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)), and "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent,

5

relevant and reasonably credible evidence as to offend the interests of justice," Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Because a violation of a restraining order is punishable as a quasi-criminal act, a defendant is entitled to the rights of all criminal defendants. We must, therefore, ensure the State has carried its burden of proving the defendant's guilt beyond a reasonable doubt. See N.J.S.A. 2C:1-13(a); Krupinski, 321 N.J. Super. at 45. To be guilty of the disorderly persons offense of contempt of a restraining order under N.J.S.A. 2C:29-9(b)(2), the State must prove beyond a reasonable doubt: (1) there was an order entered under the PDVA; (2) defendant knew of the existence of the order; and (3) defendant purposefully or knowingly violated the order. State v. Chenique-Puey, 145 N.J. 334, 341-42 (1996) (citing N.J.S.A. 2C:29-9(b)).

As noted by the trial judge, only the third factor is at issue here. "[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a restraining order knew his [or her] conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). Based on our review of the record, we are satisfied there is sufficient credible

evidence to support the judge's finding of guilt. Although the evidence establishing defendant's guilt is circumstantial, in our view, it is compelling. "To be sure, circumstantial evidence often can be as persuasive and powerful as direct evidence and sufficient to support a conviction." State v. Lodzinski, 249 N.J. 116, 146-47 (2021); see also State v. Mayberry, 52 N.J. 413, 437 (1968) ("[I]ndeed in many situations circumstantial evidence may be more forceful and more persuasive than direct evidence." (internal quotation marks omitted)).

The judge relied heavily on his credibility determinations. Although he did not "specifically articulate detailed findings of credibility in the record, the reasons supporting [his] determinations of the witnesses' relative credibility may be inferred from, and are well-supported by, the account of the facts and witnesses' testimony presented in [his] decision." State v. Locurto, 157 N.J. 463, 474 (1999). "Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." Ibid. The judge credited J.C.'s account and observed nothing in J.C.'s demeanor suggesting he was devious, deceitful, or calculating enough to concoct the messages and send them to himself. See State

v. Jamerson, 153 N.J. 318, 341 (1998) (noting a witness's demeanor and character are instructive in making a credibility determination).

The totality of the circumstances, particularly the timing and content of the text messages, convincingly supports this finding. The messages were a direct reply to J.C.'s communication through the police for the return of the items shortly after the request was made. It was rational for the judge to infer that defendant's emotions and motive made it much more likely that she sent the flurry of insulting, threatening text messages. The factfinder "may draw an inference from a fact whenever it is more probable than not that the inference is true, and . . . the veracity of each inference need not be established beyond a reasonable doubt." Lodzinski, 249 N.J. at 144 (internal quotation marks omitted). "Because the entire case was premised on disputed testimony and the credibility of witnesses," we defer to the judge's findings as they are based on sufficient, credible evidence in the record, Cesare, 154 N.J. at 416, and we discern no legal or factual basis to intervene.

To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-1572-23