**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5430-11T4
A-5431-11T4

SUSAN MARIE HARTE,

    Plaintiff-Respondent,

v.

DAVID RICHARD HAND,

    Defendant-Appellant.

_____

T.B.[1],

    Plaintiff-Respondent,

v.

DAVID RICHARD HAND,

    Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **December 18, 2013** |
| **APPELLATE DIVISION** |

Argued Telephonically November 7, 2013 —
Decided December 18, 2013

Before Judges Espinosa, Koblitz and
O'Connor.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Atlantic
County, Docket Nos. FM-01-112-09 and FV-01-
755-99.

_____

[1] We use initials for this plaintiff because the child support
order emanated from a domestic violence matter.

Andrew L. Rochester argued the cause for appellant (Morgenstern & Rochester, attorneys; Mr. Rochester, on the briefs).

Julie Davis Lisa argued the cause for respondent Susan Marie Harte.

T.B., respondent, argued the cause pro se.

The opinion of the court was delivered by

KOBLITZ, J.A.D.

This appeal raises the issue of how to properly calculate child support for multiple families. Defendant David Richard Hand appeals from two separate child support orders entered on November 7, 2011, and orders denying reconsideration entered on May 25, 2012. He also appeals from a June 25, 2012 order granting plaintiff Susan Marie Harte $600 in counsel fees. The orders regarding support were entered on the same date by the same motion judge and the issues stemming from those orders in the two appeals are identical. We resolve both appeals in this decision, reversing and remanding only for a recalculation of support that takes into account defendant's financial obligations towards all three of his children. We affirm the counsel fee award to Harte. We also affirm the determination that defendant's vocational report represented a net opinion and therefore did not demonstrate a prima facie case of changed circumstances requiring further discovery.

Defendant has three children, each of whom has a different mother. Defendant's oldest son lives with defendant and his current wife. This child's mother lives in Florida and does not contribute to his support. Defendant's younger son lives with his mother, plaintiff T.B. His youngest child, a girl, lives with defendant's former wife, Harte. Defendant was employed as a concrete layer and finisher before he was seriously injured in a 2003 garage collapse at the Tropicana Casino Hotel in Atlantic City. As a result of this injury, he received a settlement of $1.2 million in 2007. He claims to have netted $533,822 after paying several "obligations." At the time of his personal injury settlement, defendant was married to Harte and paying child support to T.B.

After the settlement, defendant agreed to an imputation of $57,200 in annual income when recalculating child support for T.B.[2] Harte and defendant were divorced in 2008 and defendant again consented to an imputation of $57,200 in annual income as part of their January 2009 final judgment of divorce. In 2011, after a history of enforcement motions by both plaintiffs, defendant unsuccessfully moved to reduce child support for both children, claiming he was unable to obtain through wages and

[2] According to the motion judge's opinion, $57,200, or $1,100 per week, was originally derived from a 5% return on defendant's settlement proceeds with no consideration of any earned income.

investments the agreed-upon imputed income. The motion judge denied his application, but suggested that if he presented a vocational expert who could demonstrate his lack of ability to earn the imputed income, the judge would consider his application again.

Defendant, representing himself for his re-application, moved again to reduce his support, this time supplying the judge with a vocational expert's report that had been prepared prior to his previous motion, but not provided by his counsel to the judge. Defendant stated on the record at oral argument that his wife supported him.

Robert P. Wolf, Ed.D., M.B.A., completed a vocational report for defendant purporting to determine defendant's employability and earning potential. The three-page report summarized defendant's work history since the 2003 accident, noting that between 2005 and 2010 defendant worked in the construction industry for two years, but "could not continue due to injury-related impairments." During this five-year period, he was otherwise jobless. Defendant most recently worked as a clerk in the parts and sales department of a local Nissan dealership, but was terminated in December 2011. The report stated that defendant completed a tractor-trailer driver training class thereby obtaining a "Class A" commercial driver's

license and was seeking employment as a local short-haul truck driver, which would pay an average annual salary of $36,514. Wolf stated that defendant refused to seek work as a more lucrative long-distance "over the road" driver because of the potentially negative impact on his "child rearing responsibilities." Wolf concluded that $36,514 was therefore defendant's "probable income" within a "reasonable degree of vocational-economic certainty." Wolf based this projected imputed income on defendant's work history, a summary of his medical and mental condition, some medical reports and salary estimates from the 2010-2011 edition of the <u>Occupational Outlook Handbook</u> published by the United States Department of Labor Bureau of Labor Statistics. <u>See</u> http://www.bls.gov/ooh/transportation-and-material-moving/heavy-and-tractor-trailer-truck-drivers.htm (last visited December 2, 2013). Wolf relied on defendant's expressed desire to be a truck driver, although defendant stated at oral argument that his driver's license was suspended.

We should not disturb the trial court's findings unless the record does not support the determination with substantial, credible evidence. <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 <u>N.J.</u> 474, 483-84 (1974). Appellate courts accord particular deference to the Family Part because of its "special

jurisdiction and expertise" in family matters. <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 412 (1998).

I

The judge calculated child support for the two children not living with defendant based on the individual financial circumstances of the mothers as provided in the Child Support Guidelines. <u>R.</u> 5:6A. In both calculations, the judge entered the undisputed dependent deduction of $177 for the child living with defendant on line 2(d). She determined that it would be unfair to the mothers to designate either order as the initial order, thereby deducting that amount from defendant's available income when calculating the support order for the other child. The judge therefore calculated both support obligations using defendant's imputed annual income of $57,200 as if the only other child defendant supported was the oldest son living with him.

We do not approve the child support calculation method utilized by the motion judge. Equality in treatment for the mothers should not be obtained by requiring the father to pay an inappropriately high level of support for both children. According to <u>Rule</u> 5:6A, the Child Support Guidelines "shall be applied" when a court is calculating or modifying child support. The "guidelines may be modified or disregarded by the court only

where good cause is shown. . . ." Ibid. Although we agree with the judge's concern that the two mothers should not be treated unequally, we do not approve of the method used to achieve equality.

The Guidelines require the court to consider multiple family obligations to obtain an equitable resolution that does not favor any family. Pressler & Verniero, Current N.J. Court Rules, comment 10 on Appendix IX-A to R. 5:6A at 2587-88 (2014). The Guidelines also anticipate an adjustment when an obligor must support more than one family. Pressler & Verniero, supra, comment 21 on Appendix IX-A at 2599. Pursuant to the Guidelines, prior child support orders must be deducted from an obligor's weekly income because such an obligation "represents income that is not available for determining the current child support obligation . . . ." Thus, "the amount of such orders must be deducted from the obligor's total weekly Adjusted Gross Taxable Income." Pressler & Verniero, supra, Appendix IX-B at 2612. By leaving line 2(b) blank on both the Harte and T.B. worksheets, the judge misapplied the Guidelines. Pressler & Verniero, supra, Appendix IX-B at 2612; see Schwarz v. Schwarz, 328 N.J. Super. 275, 285 (App. Div. 2000) (explaining that the trial court erred by failing to calculate and apply an obligor's

other dependent deductions or to explain on the record why these deductions were not applicable).

A later-born child should not be penalized by reducing the obligor's available income by the prior child support obligation. To achieve parity among the children of defendant, we suggest the use of the "prior order" adjustment under the child support guidelines must be modified. For example, here, Guidelines support should be calculated for Harte,[3] first considering her child as having the prior order and listing T.B.'s child as the recipient of the second order; then flipping these positions so the T.B. child is considered the first order and Harte's child considered the recipient of the second order. Similar calculations would be performed in T.B.'s matter, first considering her order as the first entered, then as the second entered. In each calculation, the party receiving the "second" order would have the amount calculated for the "first" order entered on line 2(b) of the worksheet. Then, after the four calculations are prepared, all including defendant's oldest child as another dependent deduction of $177 on line 2(d), the two resulting T.B. worksheet obligations,

---

[3] Each child support worksheet should use the data for that family. For example, Harte has $221 per week of childcare expenses while T.B. has none (worksheet line 8) and Harte earns significantly more money than T.B. (worksheet line 1).

located at line 27, would be averaged and the two Harte worksheet calculations averaged. Defendant would then be ordered to pay the average of the two support calculations to each plaintiff. This method would ensure that the children were treated fairly regardless of birth order, while not disregarding the father's obligation to pay for all three children. This may well not be the only way to equitably calculate support for multiple families, but we suggest it as one workable method of doing so that is consistent with the Guidelines. We therefore remand for a recalculation of support for the two families.[4]

Importantly, these orders were calculated in the same county at the same time. Even when this does not occur, the Guidelines indicate that an obligor's multiple obligations to different families should be taken into consideration in determining an equitable amount of support for each child. The Guidelines state:

> In some cases, one individual may be obligated to pay child support to multiple families. When the court adjudicates a case involving an obligor with multiple family obligations, it may be necessary to review all past orders for that individual. If the

---

[4] We note that support should be calculated using the schedule of child support awards in effect when the motion judge calculated support, rather than the schedule effective September 1, 2013, because a change in the schedule is not sufficient to modify support. Pressler & Verniero, supra, comment 23 on Appendix IX A at 2600.

> court has jurisdiction over all matters, it may either average the orders or fashion some other equitable resolution to treat all supported children fairly under the guidelines.
>
> [Pressler & Verniero, supra, comment 10 on Appendix IX-A at 2588.]

Rule 5:2-1(a) states that venue in a family case shall be laid in the county where the child is domiciled. However, venue rules may be relaxed to allow child support matters to be heard in another county to achieve an equitable result in conformity with the goals of the Guidelines.[5] With the agreement of a judge from the other county, a judge could review a child support order from that other county, after putting all parties involved on notice. See R. 5:2-2 and R. 4:3-3(a). Distant parties could appear by telephone.

II

N.J.R.E. 703 sets forth the criteria for determining whether an expert opinion may be admitted into evidence and requires that the expert conclusions be founded in "facts or data" and that those facts be "reasonably relied upon by [other] experts in the field." N.J.R.E. 703. An expert must "give the

---

[5] See, AOC Directive #3-05 at 5 (explaining that in child support enforcement cases where an obligor has another case in another county, the Probation Child Support Enforcement Unit of the county of venue should notify any other county where support has been ordered, to "allow coordination and consolidation of enforcement efforts, if necessary").

why and wherefore" that supports his or her opinion in order for a court to consider the expert's report. Pomerantz Paper Corp. v. New Comm. Corp., 207 N.J. 344, 372-74 (2011) (internal citations omitted). The opinion must be more than a "mere conclusion." Id. at 372. The net opinion rule is succinctly defined as "a prohibition against speculative testimony." Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div.), certif. denied, 122 N.J. 333 (1997).

The motion judge stated that defendant's vocational economic report was a "net opinion really based on nothing more than accepting Mr. Hand's word that he was training as a truck driver and going to an Occupational Outlook Handbook to find out what that particular profession pays." The judge reasoned that "[t]his evaluation does not provide the [c]ourt with any useful information as to Mr. Hand's disabilities or limitations," and "Mr. Hand has not supported his basis for a change in circumstance based on any medical or psychological lingering damage [from his accident.]" The judge rejected defendant's request for a decrease in support payments because he has "not established that his earning capacity is diminished such that he cannot earn the $57,200 imputed to him or that he is presently working and earning income at his maximum capacity."

The judge determined that this report represented a net opinion. Wolf relied on defendant's expressed desire to enter the short-haul trucking field and conducted no independent evaluation of his true earning capacity. As the conclusory report did little to analyze defendant's true earning capacity, the motion judge correctly refused to consider it.

### III

Defendant also appeals from the award of $600 of the $2600 in counsel fees requested by Harte, the only party to have an attorney at that time. A review of counsel fees awarded in a matrimonial case is judged by an abuse of discretion standard. J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012). We affirm the modest fee assessment based on the motion judge's thorough written opinion in which she considered all of the relevant factors mandated by Rule 5:3-5(c). We note that bad faith is not the sole requirement for an assessment of fees. N.J.S.A. 2A:34-23 (noting that good or bad faith of the party is just one of the factors a trial judge may consider when assessing counsel fees).

Affirmed in part, reversed in part and remanded for a recalculation of child support. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5430-11T4