105 A.3d 1171

SUSAN MARIE HARTE, PLAINTIFF, v. DAVID RICHARD HAND, DEFENDANT. T.B.[1], PLAINTIFF, v. DAVID RICHARD HAND, DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic County
Family Part

Decided August 1, 2014.

---

[1] The court uses initials for this plaintiff because the child support order emanated from a domestic violence matter.

546

548

*Andrew L. Rochester* for defendant (*Morgenstern & Rochester*, attorneys).

*Julie Davis Lisa* for plaintiff Susan Marie Hart.

*T.B.*, plaintiff pro se.

LIGHT, J.S.C.

This case sets forth the methodology to equitably set child support in cases of multiple family obligations, expanding on the Appellate Division's recent decision in *Harte v. Hand,* 433 *N.J.Super.* 457, 462, 81 *A.*3d 667 (App.Div.2013). Second, it clarifies the effect of the self-support reserve in modifying child support awards. Finally, it sets out the procedure to modify and equitably distribute child support among multiple children when the obligor's income falls below the self-support reserve.

## I. *Procedural Background*

This case is on remand from the Appellate Division decision of December 18, 2013. The Appellate Division consolidated and remanded two decisions entered by the trial court on November 7, 2011. This court is tasked with recalculating two child support obligations for defendant, one for plaintiff Susan Marie Harte and

the other for plaintiff T.B. The factual history of this case is set forth in the Appellate Division's decision of December 18, 2013, and on the record of the trial court decision of November 7, 2011. This court will not reiterate the factual background here, but will note that defendant has three children with three separate mothers. One child lives with defendant and his current partner. One child lives with Harte. The third child lives with T.B. Harte and T.B. are the custodial parents of the children who live with them.

The Appellate Division found that the trial court erred in calculating defendant's two separate child support obligations because it did not take into account the financial effect that one order had on the other. The trial court calculated the orders as if defendant had no prior child support obligation, thus inflating the amount of income available to him. The Appellate Division found this calculation inequitable, holding that "[e]quality in treatment for the mothers should not be obtained by requiring the father to pay an inappropriately high level of support for both children." *Harte, supra,* 433 *N.J.Super.* at 462, 81 *A.*3d 667. A later-born child should likewise not be penalized by having a child support award lower than that of his older siblings. *Id.* at 463, 81 *A.*3d 667. One goal of calculating child support for multiple families is to ensure parity among the children of the obligor. *Ibid.*

II. *Legal Analysis*

The Child Support Guidelines ("guidelines") shall be applied when a court calculates or modifies child support and may only be modified or disregarded for good cause shown. Child Support Guidelines, Pressler & Verniero, *Current N.J. Court Rules,* comment 1 on Appendix IX–A to *R.* 5:6A at 2108 (2012) [2]; *Lozner v. Lozner,* 388 *N.J.Super.* 471, 480, 909 *A.*2d 728 (App.Div. 2006). Nevertheless, the guidelines constitute a rebuttable presumption. Pressler & Verniero, *supra,* comment 1 on Appendix

---

[2] Unless otherwise noted, all citations to Pressler & Verniero, *N.J. Court Rules* are to the 2012 version.

IX–A at 2108. This means the guidelines are presumed correct unless one party proves their use inappropriate in a specific case. *Ibid.* Where a guidelines-based child support order would cause injustice, the court may disregard the award upon a showing of good cause. *See Ribner v. Ribner,* 290 *N.J.Super.* 66, 73, 674 *A.2d* 1021 (App.Div.1996); *Chobot v. Chobot,* 224 *N.J.Super.* 648, 649, 541 *A.2d* 251 (App.Div.1988).

■ Where a party has multiple family obligations and pays child support to children of different households, the court has discretionary power to adjust or disregard a guidelines-based award. *Harte, supra,* 433 *N.J.Super.* at 462, 81 *A.*3d 667; Pressler & Verniero, *supra,* comment 10(b) on Appendix IX–A at 2503; Pressler & Verniero, *supra,* comment 21(*o*) on Appendix IX–A at 2515.

■ Previous child support obligations represent income not available to the payor when determining a current child support award. Pressler & Verniero, *supra,* Appendix IX–B at 2528. As such, when calculating child support, the court deducts the prior child support obligation from the obligor's weekly adjusted gross taxable income. *Ibid.* Without modification, the first-born child will receive a higher child support order because the obligor's income is considered without prior child support deductions. The later-born child's award will be less because the obligor's income is reduced by his or her previous child support order. To remedy this situation, the court may either average the custodial parent's awards or find another equitable solution to ensure that all children are treated fairly while taking into account the obligor's ability to pay. *Harte, supra,* 433 *N.J.Super.* at 462, 81 *A.*3d 667.

■ To equitably calculate child support awards for multiple family obligations, the court will use the formula set forth in the Appellate Division's decision with certain modifications discussed below. The court will calculate two separate child support obligations for each custodial parent and then average the two together. One award is calculated as if the obligor has no prior child

support order, and the other is calculated taking into account the prior support order, or orders. The court then averages each custodial parents' two worksheets together. The average of the two shall become the child support award for that custodial parent.

In the instant case, as directed by the Appellate Division, the court will calculate child support using the schedule in effect on November 7, 2011, when the child support orders were originally calculated. Additionally, the court will determine child support using the financial information of the parties as it existed at the time, although present circumstances may have changed.

We begin by calculating child support for Harte without taking into account defendant's child support obligation to T.B. Harte's income is $1245 per week. Her work-related daycare expense is $221 per week. The child's share of the health insurance premium is $11. For income tax purposes, she filed as a single and took three allowances. Defendant's income is imputed at $1100 per week. He pays $55 a week for union dues. He received an Other Dependent Deduction (ODD) in the amount of $177 for his minor child with whom he lives. Defendant filed single with one allowance. According to the guidelines, the child support amount payable to Harte is $216 per week. This represents worksheet number one for Harte.

The second calculation is for T.B., and does not take into account defendant's child support obligation to Harte. T.B. earns $290 per week. The court approved $48 per week in extraordinary expenses for the child. The child's share of the health insurance premium is $44 per week. T.B. filed as a single and took four allowances. Defendant's financial information, as described above, remains the same. The resulting child support obligation is $226 per week. This is worksheet number one for T.B.

The third calculation shall determine Harte's child support award taking into account defendant's obligation to T.B. The income figures remain the same. On line 2b of the worksheet,

$226 per week is included, representing defendant's obligation to T.B. The resulting child support amount on Harte's second worksheet is $162 per week. The court now averages Harte's two child support worksheets together. Averaging Harte's first order of $216 and second order of $162 results in a child support order of $189 per week.

The final calculation is for T.B. This second worksheet takes into account defendant's obligation to Harte. As above, the financial information remains constant. The court includes $216 on line 2b of the worksheet representing defendant's prior support order to Harte. The resulting child support amount is $172 per week. Averaging T.B.'s first order of $226 and second order of $172 results in an award of $199 per week. Without more, defendant's combined child support obligation would be $388 per week ($189 to Harte and $199 to T.B.) and may place his income below the self-support reserve, leaving him with insufficient income to survive even at a subsistence level. As such, further analysis is required.

### 1. Self–Support Reserve

The self-support reserve ensures that an obligor and obligee have sufficient income to maintain a "basic level of subsistence living" after child support is awarded. Pressler & Verniero, *supra,* comment 7(h) on Appendix IX–A at 2500. The self-support reserve equates to 105% of the federal poverty line for one person. *Ibid.* The self-support reserve is by no means a living wage; it is by definition, subsistence living. The court understands that realistic living expenses are difficult to maintain on a subsistence income. Thus, it is imperative that the court determines whether the support obligation puts the parent below the self-support reserve, especially for individuals with multiple family obligations.

The self-support reserve is a calculation of each parent's net income minus their respective share of the support obligation. "The court must carefully review the obligor's income and actual living expenses to determine the maximum amount of

child support that can reasonably ordered without denying the obligor the means of self-support at a minimum subsistence level." Pressler & Verniero, *supra*, comment 20(a) on Appendix IX–A at 2514–15; *Capaccio v. Capaccio*, 321 *N.J.Super.* 46, 56, 728 *A*.2d 253 (App.Div.1999). If the support orders reduce the obligor's income to an amount below the self-support reserve, the orders should be adjusted accordingly. Pressler & Verniero, *supra*, comment 20(a) on Appendix IX–A at 2514–15.

### a. Self–Support Reserve Calculation

■ In calculating the self-support reserve in cases with multiple family obligations, the court will use the following steps. First, determine the federal poverty guideline for the current year. *See* Pressler & Verniero, *supra*, comment 7(h) on Appendix IX–A at 2500. In 2012, 105% of the federal poverty guideline was $220 per week.

Second, combine the obligor's support orders (the final support amount determined by averaging the custodial parent's two worksheets, as shown above). Thus, combining defendant's $189 order to Harte and his $199 award to T.B. results in a total support obligation of $388 per week.

Third, the court must calculate the net income of the non-custodial parent. To do so, take the adjusted gross taxable income from line 2 of the worksheet. Deduct the figures on lines 2a (taxes), 2b (combined child support orders, as determined in step 1 of the process as set forth above), 2c (mandatory union dues), and 2d (ODD). Add any non-taxable income. The result is the party's net income. For defendant, his gross income is $1100. The court deducts $271 in taxes, $388 in child support orders, $55 in mandatory union dues, and $177 for his ODD. There is no non-taxable income here which would have increased his available net income. Thus, his net income is $209 per week.

Finally, subtract the poverty guideline amount ($220) from the obligor's net income ($209) to determine the self-support reserve

amount. The result is $11. As such, defendant's income falls below the self-support reserve by $11.

Next, the court must decide whether the custodial parent's income is above or below the self-support reserve. For the custodial parents, the calculation is somewhat simpler. For each custodial parent, the court takes the self-support reserve calculations from line 25 of each of the two worksheets, the one including the prior support order and the one without. Then the court averages the two together for each custodial parent. If the average of the two line 25 amounts is below 105% of the poverty guideline for the year, then the custodial parents' income is below the self-support reserve.

Turning first to T.B., the self-support reserve test amount from line 25 of worksheet one is $176. The amount from worksheet two is $165. The average of the two is $171 (rounded). For Harte, her self-support reserve amount from line 25 of worksheet one is $644. On worksheet two, the amount is $604. The average of the two is $624.

### i. Both Parents Below the Self–Support Reserve

If the non-custodial parent's income falls below the self-support guideline *and* the custodial parent's income is also below 105% of the poverty line, no adjustment shall be made to the child support award. Pressler & Verniero, *supra,* comment 20(a) on Appendix IX–A at 2514–15. Thus, even if the obligor falls below the self-support reserve, the court will not modify the support order and the order will stand.

Turning first to T.B., the averaged self-support reserve amount from above is $171 per week. The self-support reserve of 2012 was $220. Thus, T.B. is $49 below the self-support reserve. Since both parties fall below the self-support reserve, no modification shall be made. Pressler & Verniero, *supra,* comment 20(a) on Appendix IX–A at 2514–15. The order of $199 per week will stand.

## ii. The Custodial Parent Above the Self–Support Reserve

Where an obligor falls below the self-support reserve but the custodial parent is above the reserve, the court will order a fixed dollar amount between $5 per week and "the support amount at $170 combined net weekly income for the appropriate number of children." Pressler & Verniero, *supra*, comment 20(a) on Appendix IX–A at 2514–15. To determine this amount, the court must use the chart found in Appendix IX–F. Pressler & Verniero, *supra*, Appendix IX–F at 2567. At the time, the support amount for a combined net weekly income of $170 for one child according to Appendix IX–F was $44 per week. *Ibid.* In other words, if the non-custodial parent falls below the self-support reserve but the custodial parent is above it, the court shall order a modified amount between $5 and the number found on the first column of the child support awards schedule of Appendix IX–F, here $44 per week.

In Harte's case, her self-support reserve amount from worksheet one is $644. In worksheet two, her self-support reserve number is $604. The average of the two is $624. As such, Harte is far above the self-support reserve.

Since Harte is above the self-support reserve and Hand is below it, the court shall modify his child support order to Harte. The court determines that a $44 order is appropriate in this case.

### b. Equitably Distributing Multiple Family Obligations Among the Children

When the payor's multiple family obligations reduce his or her income to an amount below the self-support reserve, "the orders should be adjusted to distribute the obligor's available income equitably among all children." Pressler & Verniero, *supra*, comment 10(b) on Appendix IX–A at 2503; Pressler & Verniero, *supra*, comment 21(*o*) on Appendix IX–A at 2515. The court may average the orders, or in its discretion, determine another equitable resolution to treat the child fairly under the

guidelines. *See* Pressler & Verniero, *supra*, comment 10(b) on Appendix IX–A at 2503.

 Equity among the children is a goal of the courts, and the guidelines. *Harte, supra,* 433 *N.J.Super.* at 462, 81 *A.*3d 667. Given the disparity in the incomes of the two custodial parents, it would be inequitable simply to average the orders, or to order the child support awards set forth above with defendant paying $199 to T.B. and $44 to Harte. The most equitable way to divide the child support amount is proportional to the custodial parent's respective net incomes.

To start, the court will determine the new total child support amount. Here, defendant's total child support obligation is $243 per week ($199 plus $44). Next, the court will determine the proportional earnings of the custodial parents. Harte's net income is $961. T.B.'s net income is $270. To find the proportional relationship between the custodial parents' incomes, divide the net income of the higher-earning custodial parent into the net income of the lower-earning custodial parent. Thus, the court divides $961 into $270. This equals 28%. The custodial parent with the lower income will receive the higher percentage of the total child support award, and the custodial parent with the higher income will receive the lower percentage. Thus, Harte, whose income is substantially higher, shall get 28% of the combined child support order. T.B., who earns much less, shall receive the other 72% of the combined child support award.

Therefore, the court holds that T.B. shall receive 72% of the total child support order of $243, or $175 per week. Harte shall receive 28% of $243, or $68 per week. In T.B.'s case, this makes available to the child $280 per week—$175 from defendant and $105 from T.B.'s own share of the support obligation (from line 14 of the worksheet). For Harte, the child has $425 per week available including defendant's obligation of $68 and $357 from Harte's share of the support obligation (from line 14).

III. *Conclusion*

Orders implementing this decision are being filed and are effective November 7, 2011, the date of the trial court's original hearing. Probation is directed to credit defendant's account accordingly. Should the parties experience changed circumstances with regard to current income, living expenses, expenses for the children, or additional children, they may file motions to modify child support.

In sum, the following steps are utilized to calculate child support for obligors with multiple family obligations taking into account the self-support reserve.

1. For each custodial parent calculate two NJ Guideline worksheets.

2. Calculate one worksheet that includes no prior child support order (leave blank line 2b).

3. Calculate a second worksheet for the custodial parent including the child support number produced from the first calculation of the other custodial parent.

4. For each custodial parent, average their two worksheets together. The average will be the child support amount for that custodial parent.

*Self–Support Reserve*

5. Determine the federal poverty guideline amount for the current year. Pressler & Verniero, *supra,* comment 7(h) on Appendix IX–A.

6. Combine the child support amount ordered for each custodial parent.

7. Calculate the net income of the non-custodial parent. Take the Adjusted Gross Taxable Income from line 2. Deduct the figures on lines 2a (taxes), 2b (combined child support orders, as determined in step 1 of the process), 2c (mandatory union dues), and 2d (ODD). Add any non-taxable income. The result is the party's net income.

8. Subtract the poverty guideline amount from the obligor's net income. If a negative number results, the obligor is under the self-support reserve.

9. For the custodial parent, take the self-support reserve amount produced on line 25 of each of the two worksheets.

10. For each custodial parent, average the self-support reserve amount. The average becomes the self-support reserve amount for that custodial parent.

11. If both the non-custodial and the custodial parent are above the self-support reserve, no further action is required.

12. If both the non-custodial and the custodial parent are above the self-support reserve, no further action is required. The child support award should not be modified.

13. If the non-custodial parent is below the self-support reserve, and the custodial parent is above the self-support reserve, the order should be modified.

14. In its discretion, the court should order a fixed dollar amount between $5 per week and "the support amount at $180 combined net weekly income for the appropriate number of children." [3] This amount is found on the chart in Appendix IX–F of Pressler & Verniero, *supra.*

*Equitably distributing awards if the court modifies a child support order because of the self-support reserve*

15. Determine the new total child support amount. Combine the child support awards again, taking into account any modifications.

16. The court may either distribute the child support awards based upon the proportional income of the custodial parents, average them, or determine another equitable method to distribute the awards fairly among the children.

---

[3] This refers to the amount as of 2014. *See* Pressler & Verniero, *supra,* comment 21(*o*) on Appendix IX–A at 2598–99 (2014).

*Distributing the awards based upon the proportional incomes of the custodial parents*

17. To find the proportional relationship between the custodial parents' incomes, divide the net income of the higher-earning custodial parent into the net income of the lower-earning custodial parent. This will produce a percentage. Find the other percentage by subtracting the number from 100.

18. The lower-earning custodial parent will receive the higher percentage of the total child support award. The higher-earning custodial parent will receive the lower percentage.

19. Take the total child support amount and apply the percentages above to each custodial parent's award. This will determine the child support orders.