**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1700-18T4

C.M.K.,

    Plaintiff-Appellant,

v.

S.K.,

    Defendant-Respondent.

_____

Argued December 9, 2019 – Decided January 6, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0199-17.

Yaira Dubin (O'Melveny & Myers, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant (O'Melveny & Myers, LLP, attorneys; Allen W. Burton, and Daniel S. Shamah (O'Melveny & Myers, LLP) of the New York bar, admitted pro hac vice, on the briefs).

Brian D. Winters argued the cause for respondent (Keith, Winters, Wenning & Harris, LLC, attorneys; Brian D. Winters, on the brief).

PER CURIAM

Plaintiff C.M.K.[1] appeals from an amended judgment of divorce (divorce judgment) and a "consent judgment for joint legal custody and shared parenting time" (custody judgment) entered by the Family Part on November 7, 2018. Because we find that the entry of the judgments failed to comply with the procedural requirements of Rule 4:42-1, we reverse and remand for further proceedings consistent with this opinion.

I.

We dispense with a detailed factual recitation, but broadly state the nature of the parties' dispute to provide the context for our determination. Plaintiff and defendant, S.K., were married in November 2000 and have six children. The eldest child was born in 2002; the youngest was born in 2009. Plaintiff filed a divorce complaint in August 2016. Defendant filed an answer and counterclaim. On August 27, 2018, the day their divorce trial was scheduled to commence, the parties "reached an agreement . . . on the major custody and parenting time issues" and "the issue of a parenting coordinator." The parties agreed on the record to "share joint legal custody of all six of their children," with plaintiff as

---

[1] We use initials for the parties to protect their privacy, pursuant to Rule 1:38-3(d)(1).

A-1700-18T4

the "parent of primary residence," and defendant as the "parent of alternative residence." They further agreed to a parenting schedule, to select a parenting coordinator, and on a fee schedule.

At a second hearing on August 29, 2018, the trial court stated it would "be putting the divorce through with the agreements and then everything [would] be memorialized in . . . an amended judgment of divorce." Plaintiff's counsel noted he had received a draft document that "attempt[ed] to incorporate" the settlement terms but "there [was] going to be some back and forth on that." Those final terms would be subsequently incorporated into an amended judgment of divorce.

The parties then proceeded to place additional terms they had agreed upon on the record. They agreed on the distribution of the children's passports and tax exemptions. The parties also agreed that Amy Wechsler would "be appointed as the parenting coordinator in accordance with the fee arrangement that was [previously] put on the record." The parties additionally agreed that except for issues "related to any choice of Jewish schools for the children" and "monies of the Chabad of Hillsborough," "all other outstanding issues,"

including the existing seruv[2] and the issuance of a gett,[3] would be submitted to arbitration to the Beis Din of Mechon L'hoyroa, a Rabbinical Court, located in Monsey, New York. The Beis Din proceeding could, however, "address issues of any compensation or assets of the Chabad that may or may not have been given to [plaintiff] as either part of her compensation or anything else."

Regarding the children's schooling, the following colloquy took place between the parties' attorneys:

> PLAINTIFF'S COUNSEL: Right. Right. So, and again, we just want to make clear that this Beis Din will have no jurisdiction on issues of custody, parenting time, on any of those issues that were addressed before the court on [August 27, 2018,] and, as well, the choice of schools is an issue for the parenting coordinator. It is not for the Beis Din.
>
> . . . .
>
> DEFENDANT'S COUNSEL: [I]n terms of the schooling, both parties are preserving all of the arguments that they would have made before the court as to the children attending . . . Jewish schools as opposed to public schools.
>
> The statement made on the record that choice of school might go to the parenting coordinator or nobody

---

[2] A "seruv" is a form of contempt of court order issued by a Rabbinical Court to compel action by an individual.

[3] A "gett" is a divorce document in Jewish religious law which must be presented by a husband to his wife to effectuate their divorce.

A-1700-18T4

is changing the custody and parenting time agreement already reached, . . . we were very frank with this in chambers.

[Defendant] is preserving the right to argue before the rabbinical court that the children should attend Jewish school. As part of the issue of allocation of that cost, [plaintiff] is preserving the right to argue that she may not be able to afford that. But neither of them are being precluded from making those arguments by whatever was placed on the record today and the agreement to arbitrate.

PLAINTIFF'S COUNSEL: And that is correct, your Honor. And the records reflect that the oldest child . . . is presently in the public school system.

THE COURT: Yes.

PLAINTIFF'S COUNSEL: Certainly the Beis Din did not have jurisdiction to order that [the oldest child] be placed in a Jewish school because he's in a public school right now.

THE COURT: Okay.

DEFENDANT'S COUNSEL: As I said, the parties are preserving their arguments.

The court then proceeded to grant a dual judgment of divorce to the parties, stating:

I find that both parties understood they had a right to a trial on this issue and they knowingly and voluntarily waived that right in part because they entered into an agreement on some on the issues.

5

[T]he other issues they will go to trial on. It will be in a different forum. It will be in arbitration in a religious forum and they have preserved their rights to do that.

. . . .

I find that the oral agreement placed on the record has been entered into freely and voluntarily by the parties.

The parties are satisfied the terms are fair and equitable under all the circumstances.

I make no findings as to the terms of the agreement, as I have not taken testimony as to the circumstance of the parties; however, as it is the parties' desire to abide by the terms of their settlement, it shall be incorporated and shall survive the judgment of divorce.

So the court will grant a judgment of divorce to the plaintiff for the grounds set forth in her complaint and [the court] will grant a judgment of divorce to the defendant [on] the grounds set forth in his counterclaim and incorporate the terms . . . of the custody and parenting agreement into this . . . judgment of divorce. And any other – the ancillary items that were agreed upon, such as the passports, the tax exemptions, the parenting coordinator and those will also be put in.

The court entered a judgment of divorce, which did not contain the terms of the oral agreement.

On October 10, 2018, defendant's counsel submitted a lengthy letter to the court that noted the parties' unsuccessful attempts to memorialize the agreement

6

reached during the two August 2018 hearings. Along with the letter, counsel submitted a proposed custody judgment and a proposed amended divorce judgment, which he asked the court to enter under Rule 4:42-1(c), the so-called five-day rule. At issue on appeal are the custody judgment's non-disparagement clause and the divorce judgment's arbitration clauses.

Regarding the non-disparagement clause, the letter stated: "We had asked to add a paragraph prohibiting each party from criticizing the other in any publication, including social media. [Plaintiff] has refused to add such language. We are disturbed by this refusal and included what should be this self-evident language." Paragraph fifteen of the proposed custody judgment, in turn, stated:

> Neither party shall for any reason or at any time denigrate or criticize the other party, his or her parenting style or decisions, his or her lifestyle, or his or her family, friends or associates, to or in the presence or hearing of the Children. Neither party shall denigrate or criticize the other party in a public manner, such as by way of print publication, broadcast or on social media. Both parties expressly agree to insist on and support the Children having and showing respect and love for the other party and respect for both parties' roles in the Children's lives and in the community.

Regarding the arbitration clauses, the letter stated:

> [P]aragraph [6] describes the scope of the agreement to arbitrate before the Rabbinical Court. [Plaintiff] asks

A-1700-18T4

that the language be expanded to provide that the Rabbinical Court does not have jurisdiction over the issues already resolved and placed on the record. My document as drafted already provided for this with the opening sentence that the Rabbinical Court will be presented with "remaining and unresolved" issues, but I added language anyway that the Rabbinical Court will not adjudicate those settlements already set forth in the [custody judgment]. While [plaintiff] also attempts to add language that the Rabbinical Court has no authority over the choice of schools for the children, this was a specific dispute and we placed on the record that both parties preserve their rights to present all arguments regarding the children's schooling before the Rabbinical Court. That cannot be modified now retroactively.

The proposed divorce judgment, in turn, stated:

6. All remaining and unresolved issues between the parties as well as the issuance of a Jewish Divorce Decree (the [gett]) shall be submitted by way of arbitration before the Rabbinical Court known as the Bais Din Machon L'Horah in Monsey, New York. The arbitration of claims between the parties does not include the terms already resolved by the [consent judgment] and the terms of this [divorce judgment], and does not include [d]efendant's claims against the CHABAD corporation, although this limitation does not preclude the [d]efendant from arguing before the Rabbinical Court that the [p]laintiff had access to the CHABAD's funds and/or assets as it pertains to divorce-related issues. As it pertains to the children's education and the allocation of the cost of such education, the [d]efendant preserves his right to argue that the children shall remain in religious schools and the [p]laintiff preserves her right to argue that the children may be placed in public school. In general, the

A-1700-18T4

parties each preserve all the claims and arguments presented in the divorce litigation that is now being transferred to the Rabbinical Court.

7. As it pertains to the voluntary nature of the agreement to arbitration:

. . . .

e. With respect to matters associated with the well-being of the children, the Rabbinical Court shall record the proceedings, maintain evidence, and issue a written decision that contains its Findings of Fact and Conclusions of Law.

On October 22, 2018, plaintiff's counsel submitted a letter to the trial court lodging objections to the form of the proposed judgments. The letter "welcome[d] a telephone conference with the [c]ourt on this matter"; and "request[ed] a sua sponte Order appointing the agreed upon parenting coordinator, and the allocation of her fees."

On October 29, 2018, defendant's counsel submitted another letter to the trial court, noting plaintiff did not respond to his October 10, 2018 letter within five days and "ask[ing] that the [c]ourt either issue the Orders as submitted or compel a conference so that [the parties] can all appear in [c]ourt and address these issues."

On October 30, 2018, plaintiff's counsel sent another letter to the trial court outlining plaintiff's specific objections to the proposed judgments.

9 <span>A-1700-18T4</span>

Regarding the non-disparagement clause, counsel stated:  "The sentence, which precludes 'criticizing' the other party in any public manner, was never agreed upon by the parties and is an infringement on my client's right to free speech. Of course, no criticism should be done by either party to the children."

Regarding the arbitration clauses, plaintiff objected to paragraph six of the proposed judgment of divorce, stating:  "The B[e]is Din has no jurisdiction on the choice of children's schools or any other custody or parenting time decisions."  As to paragraph seven (e), the letter stated:  "The B[e]is Din shall only have jurisdiction of issues pertaining to the children that are financial in nature.  No other issues respecting the wellbeing of the children shall be submitted to the B[e]is Din."   The letter requested that the court "advise what procedure [it] wishe[d] to follow to resolve these remaining issues."

On November 7, 2018, the court entered the proposed judgments, which included the non-disparagement clause and arbitration clauses as drafted by defendant, without conducting a conference or hearing to resolve plaintiff's objections.  The court did not issue an oral or written statement of reasons addressing the objections raised by plaintiff.  This appeal followed.[4]

---

[4]  Plaintiff filed a notice of appeal on December 17, 2018.

On February 6, 2019, defendant applied for an order to show cause (OTSC), seeking to "confirm the Rabbinical Court ruling and to compel [p]laintiff to return to the arbitration" on an issue concerning a child's schooling. The following day, a different judge denied defendant's request for the OTSC as non-emergent. In reaching his decision, the judge noted the "November 7, 2018 Orders . . . appear to contradict, or at least alter, the language in the [August 29, 2018 hearing] transcript" regarding whether the child's schooling issue was to be submitted to the parenting coordinator or the Rabbinical Court and the date arbitration was to be completed by. The judge also indicated "[d]efendant may file a motion regarding these requests."

Defendant filed such a motion and on April 3, 2019, the judge granted his "request that [plaintiff] be directed to return to the arbitration process" in the Rabbinical Court. In reaching his decision, the judge found "[t]he parties . . . had specifically agreed to submit this issue to the Rabbinical Court via arbitration which is memorialized in the [divorce judgment]." According to the judge, "[p]ursuant to the August 29, 2018 transcript, the parties were to submit the issue of whether the children should attend Jewish school to the Rabbinical Court and, if there were disagreements on which Jewish school to enroll the

children into, the Parenting Coordinator would facilitate that issue." Plaintiff

did not appeal from the court's April 3, 2018 order.

Plaintiff raises the following points:

> POINT I:  THE TRIAL COURT ERRED IN ENTERING JUDGMENTS THAT DID NOT REFLECT THE AGREED-UPON SETTLEMENT AND IN FAILING TO HOLD A HEARING TO ADJUDICATE THE DISPUTED ISSUES.
>
> > A. The Judgments Do Not Reflect The Parties' Agreed-Upon Settlement.
> >
> > B. The Trial Court Should Have Resolved The Parties' Disputes Concerning The Terms Of Their Agreement Before Entering The Judgments.
>
> POINT II:  THE TRIAL COURT ERRED BY INCLUDING A NON-DISPARAGEMENT CLAUSE IN THE CUSTODY JUDGMENT THAT DEPRIVES [C.M.K.] OF HER RIGHT TO FREE SPEECH.
>
> > A.  The Non-Disparagement Clause Constitutes A Prior Restraint On Free Speech.
> >
> > B.  The Non-Disparagement Clause Fails Strict Scrutiny Because It Is Overbroad.
>
> POINT III:  THE TRIAL COURT ERRED IN ORDERING ARBITRATION IN THE BEIS DIN, BECAUSE THE PARTIES DID NOT AGREE TO BEIS DIN JURISDICTION OVER MATTERS CONCERNING THE CHILDREN.

12

## II.

Our review of Family Part orders is generally limited.  <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998).  We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters."  <u>Harte v. Hand</u>, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting <u>Cesare</u>, 154 N.J. at 413).  Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence."  <u>Cesare</u>, 154 N.J. at 411-12 (citing <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974)).  We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting <u>Elrom v. Elrom</u>, 439 N.J. Super. 424, 433 (App. Div. 2015)).  Challenges to legal conclusions, as well as a trial court's interpretation of the law, are subject to de novo review.  <u>Id.</u> at 565.

"New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies."  <u>Konzelman v. Konzelman</u>, 158 N.J. 185, 193 (1999).  "In order for a contract to form, however, there must be a 'meeting of the minds,' as evidenced by each side's express agreement to every

term of the contract." State, Dep't of Treasury v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 612 (App. Div. 2006) (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538-39 (1953)).

Rule 4:42-1 establishes three alternative means by which a proposed form of judgment or order may be entered.[5] Paragraph (c), the so-called five-day-rule, provides:

> Settlement on Notice. In lieu of settlement by motion or consent, the party proposing the form of judgment or order may forward the original thereof to the judge who heard the matter and shall serve a copy thereof on every other party not in default together with a notice advising that unless the judge and the proponent of the judgment or order are notified in writing of specific objections thereto within 5 days after such service, the judgment or order may be signed in the judge's discretion. If no such objection is timely made, the judge may forthwith sign the judgment or order. If objection is made, the matter may be listed for hearing in the discretion of the court.

---

[5] Paragraph (b) of the rule, which provides for both settlement by motion and settlement by consent, is inapplicable here. Neither party signed either judgment and discussions regarding the disputed language occurred, at least in part, outside of open court and off the record. Likewise, paragraph (d) is also inapplicable since the parties did not sign the judgments and there was no "recital that all parties have in fact consented to [its] entry . . . in the form submitted."

"It is, of course, clear that an order should never be either submitted or signed under this rule unless it accurately memorializes court dispositions, is submitted following default, or has all parties' consent endorsed thereon." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 3 on <u>R.</u> 4:42-1(c) (2020).

Plaintiff objected to the form of the judgments in two letters to the court. Although the letters were not submitted to the court and opposing counsel within five days, they were received by the court and opposing counsel before either judgment was entered. In addition, the letter submitting the proposed judgments to the court acknowledged that the parties had not reached agreement as to the form of either judgment. Furthermore, the unendorsed judgments were not a memorialization of a prior court disposition—the judge never made a ruling and the parties never agreed to the disputed settlement terms on the record.

The record demonstrates that the judgments should not have been entered under the five-day rule. Instead, the trial court should have conducted additional proceedings to resolve the disputed language.

We reverse and remand for further proceedings to address and decide the issues of selecting the schools the children shall attend and the language of the non-disparagement clause. We leave the form of those proceedings, including whether to conduct a plenary hearing, to the sound discretion of the trial court.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1700-18T4