# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2128-21

H.F.V.,

    Plaintiff-Respondent,

v.

E.S.W.,

    Defendant-Appellant.

_____

        Submitted November 28, 2023 – Decided December 29, 2023

        Before Judges Whipple, Enright and Paganelli.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FV-19-0157-22.

        Tonacchio, Spina & Compitello, attorneys for appellant (Stephen R. Cappetta, on the brief).

        Respondent has not filed a brief.

PER CURIAM

In this one-sided appeal, defendant E.S.W.[1] challenges a February 16, 2022 amended final restraining order (FRO) granted to plaintiff H.F.V. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

I.

The parties dated on and off for approximately four years. Although they ended their dating relationship in August of 2021, they continued a sexual relationship for a brief period thereafter. On September 24, 2021, plaintiff sought and obtained a temporary restraining order against defendant, alleging he sexually and physically assaulted her, and broke items in her home the previous night.

On October 7, the trial court granted plaintiff a default FRO, finding defendant received notice of the final hearing and failed to appear. After defendant successfully moved to reopen the matter, it was relisted for trial.

The trial court virtually conducted the final hearing commencing in January 2022. Plaintiff was self-represented at the final hearing; defendant was represented by counsel. Plaintiff testified that on September 23, 2021, defendant

_____

[1] The parties' initials are used to protect their privacy. R. 1:38-3(d)(9) to (10).

"called [her] very upset," having learned an acquaintance of his died. Plaintiff informed defendant her current boyfriend was at her home, and defendant should not come over while her boyfriend was still there. A short time later, as her boyfriend was leaving her home, plaintiff discovered defendant "sitting in his car in [her] driveway." As defendant exited his vehicle and approached plaintiff and her boyfriend, plaintiff asked her boyfriend to leave so she could speak with defendant. Plaintiff's boyfriend left the premises, and the parties briefly conversed outside plaintiff's home before going inside.

Plaintiff testified that once the parties were inside her home, "things started escalating and [defendant] got a little bit hostile." According to plaintiff, defendant "told [her] multiple times that he wanted [her] to get on [her] knees" and perform oral sex on him. She "declined to do so." Plaintiff also testified that she then went to her kitchen sink and was "doing dishes" when defendant "slid his hand up [her] leg and touched [her] ass." Defendant told plaintiff, "if you don't want me to do this, just tell me." In response, plaintiff "asked him to please not touch [her]."

Further, plaintiff testified defendant became upset after she declined his advances, and the parties continued arguing in her living room. According to plaintiff, defendant held her down on a bed located in her living room and

3

digitally penetrated her before "shov[ing his fingers] in [her] mouth." Plaintiff stated she "bit [defendant's fingers] quite hard" and after he "got off" of her, she "struck [defendant] in the face." She also testified defendant choked her, "smashed a bunch of [her] artwork," and "knocked stuff over" before leaving her house. Once he left her home, plaintiff locked her door and called 9-1-1. As she was on the phone, defendant "attempt[ed] to break back into [plaintiff's] house through a window" to retrieve a phone defendant left behind. The State Police arrested defendant at the scene.

Plaintiff testified the parties had a history of domestic violence. She explained there were "multiple instances" when defendant "bec[ame] very verbally aggressive." She also testified that on one occasion in 2020 when the parties were living together, defendant "chok[ed her] against a wall" and "smashed artwork." She reported the incident to the State Police before moving out of the parties' home. Additionally, plaintiff stated "just a few weeks before the [September] 23[]" incident, defendant "stopped at [her] house" when she was with her boyfriend, and "trashed [her] house, knocked over a bookcase, . . . threw stuff, . . . broke a screen door, [and] smashed [her] plants." Plaintiff also testified she was concerned she and her five-year-old daughter would not be safe without an FRO because defendant was "very unpredictable" and "aggressive."

4

During defendant's testimony, he denied digitally penetrating plaintiff on September 23, 2021. He also denied: (1) asking plaintiff to perform oral sex on him; (2) putting his fingers in her mouth after digitally penetrating her; and (3) that plaintiff bit him. Defendant admitted he went to plaintiff's home on September 23, but several hours before he did so, he learned she "was actually in a boyfriend/girlfriend relationship . . . and not just having sexual relations with" her boyfriend. Therefore, he "had no intention of hanging out or staying" at plaintiff's residence.

In describing what occurred on the evening of September 23, defendant stated the parties "were just talking about the day," but plaintiff started "talking sexually." Defendant testified that at plaintiff's invitation, he "put [his] hand down" in her vaginal area and "rubbed back and forth a couple of times." According to defendant, when plaintiff "started saying, . . . ['] I love you, . . . you're still my soulmate,[']" her comments "snapped [him] back to reality." Defendant testified he "stood up, [and] told her . . . . [he] found out [she was] dating this poor guy, . . . not just having sexual relations with him," and that defendant did not "condone cheating." Defendant stated he told plaintiff, "I'm not a cheater. I don't want to be part of it. And . . . if I ever see [your boyfriend] again, . . . he's going to be able to go through my phone. He has the right to

A-2128-21

know what we've been doing."

According to defendant, after telling plaintiff he would let her boyfriend "go through [his] phone" to see messages the parties had been exchanging, plaintiff "got in [his] face" and "proceeded to start punching . . . and slapping [him]." Defendant testified that as the parties continued arguing, plaintiff retrieved what he "perceived to be a knife" and as "she put her arm out," she "caught [his] finger." Defendant stated he "exited the home," not realizing he was "cut," but then returned to plaintiff's home to retrieve his phone.

On the last day of trial, following defendant's cross-examination, the judge posed additional questions to plaintiff. The judge asked whether "a knife [was] involved in the incident" on September 23. Plaintiff responded, "Absolutely not." After permitting defense counsel the opportunity to further cross-examine plaintiff based on the judge's questioning, the judge granted plaintiff an FRO.

In his February 16, 2022 oral opinion, the judge found "the parties t[old] very similar stories about the nature of the[ir] relationship and the time frame" of the incident. But he also concluded "their account of what happened during the critical incident" "diverge[d]," so "the determination of what to do with [plaintiff's] application hinge[d] to a significant extent on . . . a[n] assessment of the credibility . . . of one party's version [of the incident over] the other."

After referencing plaintiff's testimony that defendant "committed an unwanted sexual assault upon her," and defendant "was upset about [her] involvement" with her current boyfriend, the judge stated, "based on [his] assessment of the [parties'] competing narratives," he did not believe "plaintiff [wa]s telling a story that [wa]s concocted for a malevolent reason" or that she "would make this all up." In fact, he found "her story [was] generally credible, and . . . consistent with . . . the dynamics" of the parties' "on-again[,] off-again romantic relationship." On the other hand, the judge concluded defendant's "narrative" about the incident "did not quite ring as true," and that "the greater weight of the plausible and credible evidence [wa]s that . . . plaintiff's narrative and complaint [were] more likely a way to understand what happened here."

Further, the judge stated, "given the seriousness of what[] happened[,] in terms of the sexual misconduct alleged[,[2]] and . . . some of the historical elements of the relationship[,] and the . . . short-term volatility in a number of instances, as credibly reported by the plaintiff," it was "appropriate to grant her

---

[2] Although the judge did not address the other predicate acts alleged in plaintiff's TRO complaint, namely, assault, N.J.S.A. 2C:12-1, and criminal mischief, N.J.S.A. 2C:17-3, this oversight does not affect our decision, considering the judge's well-supported finding of the predicate act of sexual assault satisfied the first prong of the Silver analysis.

A-2128-21

application under the second prong of . . . <u>Silver</u>."[3]  Before concluding the hearing, the judge reiterated, "the evidence . . . supported the allegations of an act of domestic violence under the complaint, again, based on what I find to be the general credibility of . . . plaintiff."

## II.

On appeal, defendant raises the following arguments:

POINT I

THE LOWER COURT ERRED BY ISSUING [AN] FRO[,] GIVEN THAT RESPONDENT FAILED TO ESTABLISH THAT ONE OR MORE OF THE PREDICATE ACTS, AS SET FO[]RTH BY N.J.S.A.[] 2C:25-19a, HAD OCCURRED.

> A.    The Trial Judge Erred in Ruling that Plaintiff Proved by a Preponderance of the Credible Evidence That an Assault Under N.J.S.A. 2C:12-1A[4] Occurred.

POINT II

THE LOWER COURT ERRED BY ISSUING THE AMENDED FRO BECAUSE THAT COURT DID NOT ARTICULATE THAT SUCH AN AMENDED FRO WAS "NECESSARY."

These arguments are unavailing.

---

[3] <u>Silver v. Silver</u>, 387 N.J. Super. 112, 125 (App. Div. 2006).

[4] As already mentioned, the trial court found defendant committed the predicate act of sexual assault, but the judge did not address plaintiff's allegation that defendant assaulted her.  Accordingly, for the purpose of this opinion, we presume the argument set forth under Point 1A. mistakenly refers to N.J.S.A. 2C:12-1(a), which defines the predicate act of simple assault.

8

Our review of an FRO issued after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). Findings by a trial court are generally binding on appeal, provided they are "supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016). An appellate court should defer to the trial court's findings unless those findings appear "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms, 65 N.J. at 484).

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Pursuant to Rule 1:7-4(a), a trial court must "find the facts and state its conclusions of law thereon in all actions tried without a jury." The trial court also must generally state its credibility findings even when they "may not be

susceptible to articulation in detail."  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 1:7-4(a) (2023) (citing <u>State v. Locurto</u>, 157 N.J. 463, 474 (1999)).  In fact, a trial court's credibility findings need not be set forth in detail so long as "the reasons supporting its determinations of the witnesses' relative credibility may be inferred from, and are well-supported by, the account of the facts and witnesses' testimony presented in its decision." <u>Locurto</u>, 157 N.J. at 472-74.  When adequately supported, those determinations are entitled to deference since they "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." <u>Id.</u> at 474 (citation omitted).

The New Jersey Legislature enacted PDVA to "assure the victims of domestic violence the maximum protection from abuse the law can provide." <u>G.M. v. C.V.</u>, 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting <u>State v. Brown</u>, 394 N.J. Super. 492, 504 (App. Div. 2007)); <u>see also</u> N.J.S.A. 2C:25-18. Consequently, "[the] law is particularly solicitous of victims of domestic violence," <u>J.D. v. M.D.F.</u>, 207 N.J. 458, 473 (2011) (quoting <u>State v. Hoffman</u>, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[ the PDVA] to achieve its salutary purposes," <u>Cesare</u>, 154 N.J. at 400 (citations omitted).

When considering whether the entry of an FRO is appropriate, a trial court must engage in a two-step inquiry. Silver, 387 N.J. Super. at 125. First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. Second, if a trial court finds the defendant committed a predicate act, it must decide whether to issue a restraining order. Id. at 126-27.

A judge should issue a restraining order if it is necessary "to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. "[T]his second determination . . . is most often perfunctory and self-evident. . . ." Silver, 387 N.J. Super. at 127.

Among the factors a judge should consider under the second Silver prong is "[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse." N.J.S.A. 2C:25-29(a)(1). A judge may "consider evidence of a defendant's prior abusive acts regardless of whether those acts have been the subject of a domestic violence adjudication." N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415 N.J. Super. 551, 574 (App. Div. 2010) (quoting Cesare, 154 N.J. at 405). However, the need for

11

an order of protection can be justified based on "one sufficiently egregious action." Cesare, 154 N.J. at 402.

Sexual assault is one of the predicate acts under the PDVA. N.J.S.A. 2C:25-19(a)(7). Pursuant to N.J.S.A. 2C:14-2(c)(1), a person is "guilty of sexual assault if the actor commits an act of sexual penetration with another person" "using coercion or without the victim's affirmative and freely given permission."

Governed by these principles, we have no reason to disturb the FRO. Here, the judge credited plaintiff's testimony that defendant "committed an unwanted sexual assault upon her." Moreover, the judge rejected defendant's testimony regarding the incident, finding defendant's "narrative" "for what . . . happen[ed] and why it happened did not quite ring as true." Additionally, the judge found an FRO was warranted because of "the seriousness of what[] happened[,] in terms of the sexual misconduct . . . and . . . some of the historical elements of the relationship[,] and the . . . short-term volatility [of the relationship] in a number of instances, as credibly reported by . . . plaintiff."

We are satisfied the judge's findings as to the first and second Silver prongs are amply supported by the record, and thus, entitled to our deference.

Further, because the predicate act of sexual assault is violent in nature, the need for an FRO in this matter was "self-evident." See Silver, 387 N.J. Super. at 127.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2128-21